# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CITIZENS INSURANCE )
COMPANY OF AMERICA, as )
Subrogee of Kevin Kwiatkowski, )
)   Civil Action No.:
Plaintiff, )   2:18-cv-12076-MFL-DRG
)
v. )   Honorable Matthew F. Leitman
)   Magistrate: David R. Grand
FXI, INC. )
)
Defendant. )
)

## DEFENDANT FXI, INC.'S
## MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY

Matthew G. Berard (P77024)
41000 Woodward Ave., Ste. 200 E.
Bowman & Brooke
Bloomfield Hills, MI 48304-5132
matthew.berard@bowmanandbrooke.com

James G. Argionis (#6228773)
Corey T. Hickman (#6317871)
Cozen O'Connor
123 N. Wacker Dr., Suite 1800
Chicago, IL 60606
jargionis@cozen.com
chickman@cozen.com

*Attorneys for FXI, Inc.*

## DEFENDANT FXI, INC.'S MOTION TO
## EXCLUDE EXPERT OPINIONS AND TESTIMONY

Defendant, FXI, Inc. ("FXI"), by its undersigned counsel, pursuant to Fed. R. Civ. P 702, moves to exclude certain expert opinions and testimony proffered by Plaintiff, Citizens Insurance Company of America, as subrogee of Kevin Kwiatkowski. In support of this motion, FXI relies on the accompanying Brief and Exhibits, and states as follows:

1.      This case arises out of a fire that occurred on July 11, 2016, at the home of Plaintiff's subrogor, Kevin Kwiatkowski. The fire started when Mr. Kwiatkowski's fourteen-year old son, Pierson, was playing with sparkler fireworks unsupervised in the driveway, and deliberately threw a lit sparkler into the air which landed in the roof gutter. Plaintiff alleges that the lit sparkler ignited a foam gutter guard product manufactured by FXI. Plaintiff contends that FXI's product was defective because it was flammable, asserting two counts: negligence (Count I) and breach of warranty (Count II).

2.      Plaintiff has disclosed three expert witnesses: Dr. Elizabeth C. Buc, Ruston M. Hunt, and James Maxwell. The opinions of Plaintiffs' experts are rife with unsupported speculation and improper legal conclusions. Each of Plaintiffs' experts' improper opinions should be excluded, and any testimony related thereto deemed inadmissible.

-1-

3.     Pursuant to E.D. Mich. LR 7.1, counsel for FXI sought concurrence for this Motion.

**WHEREFORE**, for these reasons and the reasons set forth in the accompanying Brief, FXI respectfully requests that the Court exclude the improper expert opinions of Dr. Elizabeth C. Buc, Ruston M. Hunt, and James Maxwell, and deem any testimony related thereto inadmissible.

Respectfully submitted,

**FXI, INC.**

By: /s/*Matthew G. Berard*
Matthew G. Berard (P77024)
Bowman & Brooke
41000 Woodward Ave., Ste. 200 E.
Bloomfield Hills, MI 48304-5132
matthew.berard@bowmanandbrooke.com

## **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUE PRESENTED ................................................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................... v

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

APPLICABLE LAW ........................................................................................... 4

ARGUMENT ....................................................................................................... 6

I.   Plaintiffs' Expert Opinions Regarding Causation Are Speculative And
     Should Be Excluded................................................................................... 6

II.  Mr. Hunt's Opinions Regarding Causation as to Plaintiff's Failure to
     Warn Claim Should Be Excluded............................................................. 10

III. Plaintiffs' Experts Improper Legal Conclusions and Opinions on
     Ultimate Issues Should Be Excluded....................................................... 12

IV.  Dr. Buc's Improper Opinions on Standards and Regulations Should Be
     Excluded .................................................................................................... 14

V.   Mr. Hunt's Opinions Regarding Sparklers Should be Excluded.............. 15

VI.  Dr. Buc's Unsupported Opinions Regarding A Reduction in the Fire
     Resistance of Nearby Materials Should Be Excluded............................... 16

CONCLUSION.................................................................................................... 16

CERTIFICATE OF SERVICE ........................................................................... 17

INDEX OF EXHIBITS........................................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Avendt v. Covidien Inc.*,
262 F. Supp. 3d 493 (E.D. Mich. 2017) .............................................................4

*Babb v. Maryville Anesthesiologists P.C.*,
942 F.3d 308 (6th Cir. 2019) ...............................................................................5

*Berry v. City of Detroit*,
25 F.3d 1342, 1354 (6th Cir. 1994) ...................................................................12

*Dow v. Rheem Mfg. Co.*,
09-13697-BC, 2011 WL 4484001 (E.D. Mich. Sept. 26, 2011),
aff'd, 527 Fed. Appx. 434 (6th Cir. 2013) ...............................................5, 6, 7, 10

*Eiben v. Gorilla Ladder Co.*,
11-CV-10298, 2013 WL 1721677 (E.D. Mich. Apr. 22, 2013) ..........................5

*Ferlito v. Johnson & Johnson Products, Inc.*,
771 F. Supp. 196 (E.D. Mich. 1991) ..................................................................13

*Jones v. Pramstaller*,
874 F. Supp. 2d 713 (W.D. Mich. 2012) ..............................................................5

*Keyes v. Ocwen Loan Servicing, LLC*,
335 F. Supp. 3d 951 (E.D. Mich. 2018) ...................................................6, 12, 14

*Meemic Ins. Co. v. Hewlett-Packard Co.*,
717 F. Supp. 2d 752 (E.D. Mich. 2010) .......................................................4, 6, 7

*Mitchell v. City of Warren*,
803 F.3d 223 (6th Cir. 2015) ...............................................................................4

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
676 F.3d 521 (6th Cir. 2012) ...............................................................................5

*Peak v. Kubota Tractor Corp.*,
924 F. Supp. 2d 822 (E.D. Mich. 2013) ..............................................................4

LEGAL\44197732\1

*Raines v. Colt Indus., Inc.*,
    757 F. Supp. 819 (E.D. Mich. 1991) ....................................................................13

*Skinner v. Square D Co.*,
    445 Mich. 153, 516 N.W.2d 475 (1994)..............................................................4

## Other Authorities

Rule 702 ................................................................................................................4

## <u>STATEMENT OF ISSUE PRESENTED</u>

1)    Should this Honorable Court exclude certain expert opinions proffered by Plaintiff's expert witnesses on the grounds that they are either speculative, consist of legal conclusions or conclusions as to ultimate issues in the case, are unreliable, or are not relevant.

FXI's Answer: **YES**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

- Fed. R. Civ. P. 702

- *Peak v. Kubota Tractor Corp.*, 924 F. Supp. 2d 822 (E.D. Mich. 2013)

- *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752 (E.D. Mich. 2010)

- *Dow v. Rheem Mfg. Co.*, 09-13697-BC, 2011 WL 4484001 (E.D. Mich. Sept. 26, 2011), aff'd, 527 Fed. Appx. 434 (6th Cir. 2013)

- *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 316 (6th Cir. 2019)

- *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 959 (E.D. Mich. 2018)

- *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994)

## BRIEF IN SUPPORT OF MOTION TO EXCLUDE

Defendant, FXI, Inc. ("FXI"), by its undersigned counsel, hereby submits its Brief in Support of its Motion to Exclude certain expert opinions and testimony proffered by Plaintiff, Citizens Insurance Company of America, as subrogee of Kevin Kwiatkowski.

## INTRODUCTION

This case arises out of a fire that occurred at the home of Plaintiff's subrogor, Kevin Kwiatkowski, on July 11, 2016, which caused damage to the structure and personal property therein. The fire started when Kevin Kwiatkowski's fourteen-year old son, Pierson, was playing with sparkler fireworks unsupervised in the driveway, and deliberately threw a lit sparkler into the air which landed in the gutter. Plaintiff contends that the lit sparkler ignited a foam gutter guard product that Kevin Kwiatkowski had purchased to keep tennis balls and baseballs out of the gutter. The foam gutter guard product was manufactured by FXI for the purpose of preventing leaves and insects from accumulating. Plaintiff contends that FXI's product was defective because it was flammable.

Plaintiff has disclosed three expert witnesses: Dr. Elizabeth C. Buc, Ruston M. Hunt, and James Maxwell. The opinions of Plaintiffs' experts are rife with unsupported speculation and improper legal conclusions. Each of Plaintiffs' experts'

improper opinions should be excluded, and any testimony related thereto deemed inadmissible.

## STATEMENT OF FACTS

1.     Kevin Kwiatkowski purchased one box of FXI's Rain Filter gutter guard system (the "Product") from Costco on May 24, 2012, (Kevin Kwiatkowski Dep., Ex. A, 15:23-24; Costco print-out, Ex. B), to install in the garage gutter to prevent balls that his son Pierson often threw onto the roof from getting stuck in the gutter. (Ex. A, 11:23-12:6).

2.     Kevin Kwiatkowski installed the Product himself.  He remembers it being an "odd shape triangle shape," and so he had to look at the materials in the package and the picture to see how to install it correctly. (Ex. A, 19:20-20:5). He did not understand "how to orient" the Product in the gutter, but believes he installed it correctly after reviewing the instructions. (*Id.*, 24:8-12).

3.     Kevin Kwiatkowski does not recall if the insert in the package was multiple pages, or if it had instructions in multiple languages. (*Id.*, 21:25-22:6). He does not recall seeing or reviewing the warranty page. (*Id.*, 22:20-23:9).

4.     Kevin Kwiatkowski did not search for additional information regarding the Product. (Ex. A, 24:13-21, 62:1-3). He did not "specifically read for" whether the Product had any fire retardant properties. (*Id.*, 62:4-14). He claims, however, he would not have bought the Product if he knew it was not fire retardant. (*Id.*).

-2-

5.    Kevin Kwiatkowski's son Jackson had purchased sparkler fireworks from Kroger days before the fire. (Jackson Dep., Ex. C, 11:1-10; Sparkler Package, Ex. D).

6.    The front of the sparkler box states prominently: "CAUTION FLAMMABLE." (Ex. D). The side panel of the box provides:

> "Caution: Flammable. Use only under close adult supervision . . . Hold in hand with arm extended way from body. Keep burning end or sparks away from wearing apparel or other flammable material . . . After use, place wire in water." (*Id.*).

7.    On the day of the fire, Kevin Kwiatkowski's fourteen year-old son, Pierson, was in the driveway using a sparkler, and he "thought it would be cool I guess if it was in the air. So then I threw it in the air and it landed on the roof and then went into the gutter." (Pierson Kwiatkowski Dep., Ex. E, 11:25-12:7, 14:15-25). Pierson had never previously thrown a sparkler into the air. (*Id.*, 21:1-3). The sparkler was lit when he threw it. (*Id.*, 15:15-25). He threw the sparkler about 20 to 25 feet in the air, and it landed 3-4 inches above the gutter on the roof and then rolled into the gutter. (*Id.*, 16:25-18:18).

8.    Pierson was not being supervised when he was using the sparklers. (Plaintiff's Answers to Interrogatories, Ex. F, ¶ 7).

9.    After the sparkler rolled into the gutter, there was not a burst of flames, and in fact no flames were visible until 10-15 seconds later. (Ex. E, 21:10-15).

10.     The police report provides that the fire was caused by "a sparkler thrown into the gutter above the garage." (Police Report, Ex. G, p. 5). The police report notes that certain shingles were "charred" and that the "eaves were consumed or missing over this center portion of the garage wall and there was very heavy charring to the roof trusses and roof sheeting." (*Id.*, p. 9).

## APPLICABLE LAW

Expert testimony regarding causation of an unwitnessed mishap "must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known." *Peak v. Kubota Tractor Corp.*, 924 F. Supp. 2d 822, 831 (E.D. Mich. 2013). The testimony cannot be based on "mere suppositions," but instead must have a "basis in established fact." *Id.*; *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 761 (E.D. Mich. 2010) ("[A]n expert's subjective belief or unsupported speculation will not" satisfy Rule 702). In a products liability action, expert testimony must do more than establish that an accident took place. *Skinner v. Square D Co.*, 445 Mich. 153, 174, 516 N.W.2d 475, 484 (1994). "Michigan law does not permit us to infer causation simply because a tragedy occurred in the vicinity of a defective product." *Id.* To that end, the "mere possibility" that a product caused an injury is not enough, and the "failure to consider other possible causes" is a "red flag" of unreliability. *Avendt v. Covidien Inc.*, 262 F. Supp. 3d 493, 531 (E.D. Mich. 2017); *Mitchell v. City of*

*Warren*, 803 F.3d 223, 230 (6th Cir. 2015) ("We have refused to rely on studies establishing that a product can possibly cause an injury to prove a product probably caused the injury.").

An expert opinion must also be "relevant to the task at hand" and must rest on a "reliable foundation." *Dow v. Rheem Mfg. Co*., 09-13697-BC, 2011 WL 4484001, at *4 (E.D. Mich. Sept. 26, 2011), aff'd, 527 Fed. Appx. 434 (6th Cir. 2013) (internal citations omitted). Courts have held that reliability may be determined based on whether the theory or technique in question has been tested, whether it has been subjected to peer review and publication, whether it has a known or potential rate of error, and whether the theory or technique enjoys acceptance in the scientific community. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). "Red flags" pertaining to reliability expert testimony include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Eiben v. Gorilla Ladder Co.*, 11-CV-10298, 2013 WL 1721677, at *13 (E.D. Mich. Apr. 22, 2013). It also may be grounds for exclusion for lack of reliability where an expert's testimony was "prepared solely for litigation." *Id.*; *Newell Rubbermaid Inc.*, 676 F.3d at 527.

Moreover, "[t]he principle that an expert may not make legal conclusions is indeed well established." *Jones v. Pramstaller*, 874 F. Supp. 2d 713, 720 (W.D. Mich. 2012); *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 316 (6th Cir.

2019) ("[W]itnesses may not tell the jury 'what result to reach' on 'ultimate legal question[s]' because such statements also 'invade the province of the jury.'"); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 959 (E.D. Mich. 2018) ("[E]xpert witnesses are not permitted to make legal conclusions."). An expert makes a legal conclusion when he or she "defines the governing legal standard or applies the standard to the facts of the case." *Keyes*, 335 F. Supp. 3d at 959.

## ARGUMENT

### I.    Plaintiffs' Expert Opinions Regarding Causation Are Speculative And Should Be Excluded

Plaintiffs' experts each assume or opine that the Product caused the fire, but fail to provide any factual support, testing, or evidence that supports their theory of causation. Each fails to perform any testing to exclude the very real possibility that a different part of the Kwiatkowski home, such as the shingles or eaves, ignited first or concurrently with the Product. As such, Plaintiffs' experts' testimony as to causation is purely speculative and should be excluded.

Where an injury is unseen, a plaintiff may show causation circumstantially, but must show more than "mere speculation." *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 769 (E.D. Mich. 2010). Expert testimony on causation must be more than "subjective belief and unsupported speculation." *Id.* A basis in "only slight evidence is not enough," and is insufficient if the theory is "at best, just as possible as another theory." *Dow v. Rheem Mfg. Co.*, 09-13697-BC, 2011 WL

4484001, at *14 (E.D. Mich. Sept. 26, 2011). Evidence must be presented which "affords a reasonable basis for the conclusion that it is more likely than not the conduct of the defendant was a cause in fact of the result." *Id.* at *22.

In *Dow*, the Court excluded expert testimony from one of the plaintiff's experts on the grounds that he did not perform any testing to verify that the injury occurred as a result of the defective product, reasoning:

> Dr. Kasner admittedly was unable to conduct any testing to verify that the gasket dislodged as a results of adhering to the seat and that Dunn was purportedly able to "rule out" overpressurization as the cause of the gasket dislodgment does not, in turn, provide an adequate foundation upon which Dr. Kasner's opinion may rest. Dr. Kasner's proposed testimony is not based upon sufficient facts or data, is not the product of reliable principles and methods, and is unsupported by reliable testing.

*Dow*, 2011 WL 4484001 at *10. The Court further reasoned that merely because the expert noted that "adhesion of rubber to metal *can* occur" does not prove "that it *did* occur in this case," and that his conclusion was only supported by "unwarranted assumptions that remain unproven." *Id.* at *6; *see also Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 761 (E.D. Mich. 2010).

Here, Plaintiff's experts each assume or speculate that the Product caused the fire. However, they fail to offer any specific facts or testing which verify that the sparkler actually ignited the Product first, as opposed to a different material on the Kwiatkowski home nearby, such as the shingles, sheeting, face board, eaves, or any material near or inside the ventilation gaps and voids. Just as in *Dow*, merely

LEGAL\44197732\1

showing that a sparkler *can* ignite the Product does not prove that it was the first material to ignite in this case. It is equally likely that a different part of the home ignited first, which subsequently ignited the Product.

There is no evidence as to the orientation of the sparkler when it landed in the gutter. All witnesses have admitted that the responding Fire Chief retrieved the burnt sparkler from the gutter before anyone was able to take photographs of its position. (Buc Dep, Ex. H, 13:15-14:17; Maxwell Dep., Ex. I, 71:16-72:6).  Further, the Fire Chief retrieved the sparkler only after fire fighters finished their work and water from fire hoses or other movement of the shingles and/or gutter would likely have repositioned the remains of the sparkler. In other words, it is not known whether the flame of the sparkler first touched the Product or whether it first touched any other burnt part of the Kwiatkowski home. There is, however, undisputed evidence that the roof shingles were melted and that the face board of the eaves was burned. (Ex. I, 15:12-22, 118:6-9, 124:21-125:9; Ex. G, pp. 6-9).

Yet, Plaintiff's experts failed to do any adequate inspection of that portion of the house where various different materials burned and failed to do any testing to rule out whether a lit sparkler could burn the specific roof shingles, eaves, or other material that was present in the home. Mr. Maxwell testified that he attempted to use a sparkler to ignite a random roof shingle which was not the same type of shingle from the home, admitting he did not know the type, model, or size of the shingles at

the home. (Ex. I, 12:10-14:20). Nor was any testing or inspection done to determine whether a lit sparkler was capable of igniting the eaves, face board, insulation, roof deck, or other material of the house where the sparkler landed, despite Plaintiff's expert Dr. Buc admitting that the fire rapidly penetrated the house's "void space." (Ex. H, 122:10-22; 124:16-125:15; 126:18- 127:24).

Instead, Mr. Maxwell applied a lit sparkler to random pieces of "plywood, OSB and a piece of corrugated board." (Maxwell Report, Ex. J, p. 5). Mr. Maxwell used materials from his own lab for this testing; he did not use samples from the Kwiatkowski home. (Ex. I, 34:9-36:13). He did not know the type of plywood at the Kwiatkowski home, and doubts that it was the same material that he tested. (*Id.*). He also admits that OSB board he used was a different material than what was at the house. (*Id.*). He did not determine whether the OSB matched the thickness of that from the Kwiatkowski home. (*Id.*). He admits there was no corrugated board used on the Kwiatkowski home. (*Id.*). This seemingly random testing performed by Mr. Maxwell is not reliable and not relevant. None of Plaintiff's experts inspected for or described the specific materials that made up the eaves, face board, insulation, or shingles on the Kwiatkowski home, and no testing was done to determine whether a lit sparkler could or actually did first ignite those unidentified materials.

Given that it is unknown how the sparkler landed in the gutter and that no testing was done to rule out the possibility that a sparkler may have first or

concurrently ignited the various burnt materials near where the sparkler landed, it is purely speculative to say that the sparkler first ignited the Product. It is entirely possible, and equally likely, that some other material near where the sparkler landed ignited first or concurrently with the Product. We will never know, since the Fire Chief pulled the sparkler from the gutter before anyone could document its positioning and since firefighting efforts likely moved the position of the remains of the sparkler even before the Chief retrieved it from the gutter. Plaintiff's experts' subjective and unsupported opinions as to causation, which completely fail to negate other possibilities of the origin of the fire, should be excluded.

## II.     Mr. Hunt's Opinions Regarding Causation as to Plaintiff's Failure to Warn Claim Should Be Excluded

As noted above, an expert's opinion on causation is "mere supposition" when his or her theory is "at best, just as possible as another theory." *Dow*, 2011 WL 4484001 at *14.

Here, Mr. Hunt's report does not contain an opinion that the accident would have been prevented had there been additional or different warnings on the packaging for the Product. (Hunt Report, Ex. K). However, at his deposition, he testified that he believes it is "reasonable to think that Mr. Kwiatkowski would either not buy the product or take some steps to somehow mitigate the hazard." (Hunt Dep., Ex. L, 114:9-115:14).

-10-

Mr. Hunt's opinion, however, is pure speculation. He did not do any research into Mr. Kwiatkowski's past fire prevention activities or safety behaviors with regards to his home. (*Id.*, 117:10-22). Further, he admits that Mr. Kwiatkowski did not alter his behavior with regards to sparklers, despite the warnings on the box, and testified that "it's very difficult to change somebody's behavior when they have experience, and specifically benign experiences, which he would have had with sparklers, but would not have had with respect to this foam filter product." (*Id.*, 117:23-118:14). Yet, Mr. Hunt admittedly did not interview Mr. Kwiatkowski and did no research whatsoever on Mr. Kwiatkowski's prior history with other flammable consumer products and whether those experiences were "benign." (*Id.*). Nor did Mr. Hunt know whether Mr. Kwiatkowski even followed the warnings that were on the Product, including the warning to use a ladder and to wear gloves to avoid cuts. (*Id.*, 121:1-6).

Mr. Hunt's opinion that Mr. Kwiatkowski would have read and heeded additional warnings – despite the fact that Mr. Kwiatkowski did not read the materials in the package until *after* he was confused during installation, and did not alter his behavior regarding sparklers – is a complete guess, and Mr. Hunt failed to perform even the most basic research about Mr. Kwiatkowski's past experiences which would conceivably support that guess. Merely being an "expert" and then guessing that a homeowner would act differently if there were additional warnings,

-11-

is not sufficient. It is "just as possible" that Mr. Kwiatkowski would not have seen or heeded any additional warning as it is that he would have altered his behavior. As such, Mr. Hunt's opinion should be excluded as "mere supposition" and speculation.

## III. Plaintiffs' Experts Improper Legal Conclusions and Opinions on Ultimate Issues Should Be Excluded

Plaintiffs' expert reports are full of legal conclusions and opinions on ultimate issues in the case that should be excluded. *See, e.g.*, *Keyes*, 335 F. Supp. 3d at 959; *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (expert may not testify as to legal conclusion that City was "deliberately indifferent" to the welfare of its citizens for purposes of a § 1983 claim, and citing with approval a Second Circuit case which noted that an expert may not testify to legal conclusion that a defendant "was negligent.") (internal citations omitted).

Dr. Buc's report opines that FXI "was negligent in that the company knew the gutter foam product would ignite . . ." (Buc Report, Ex. M, p. 12). This opinion is an improper legal conclusion on the ultimate issue in this case: whether FXI was negligent in its design of the Product. This opinion improperly "tell[s] the jury what result to reach" and should be excluded. *Berry*, 25 F. 3d at 1354.

Further, Dr. Buc opines that the Product was "unreasonably dangerous and defective as designed because it ignited readily and spread fire to the home." (Ex. M, p. 12). Mr. Hunt similarly opines that the Product was "unreasonably dangerous for its intended purpose," and that it created "an unreasonable risk of fire." (Ex. K,

p. 18). Dr. Buc and Mr. Hunt's use of the terms "unreasonably dangerous," "unreasonable risk," and "defective as designed" are improper, as these are legal terms of art that go to the elements of Plaintiff's case. Dr. Buc and Mr. Hunt cannot tell the jury what to reach on these issues. These opinions should be excluded.

Next, Dr. Buc opines that it was "foreseeable the fire would spread to the adjacent building materials and the interior of the home." (Ex. M, p. 12). Mr. Hunt similarly opined that it was not foreseeable that throwing a lit sparkler onto a gutter would have caused a house fire (Ex. K, p. 19), and that Pierson's act of throwing the sparkler "could hardly be considered to be unforeseeable and was certainly not an act of reckless disregard for safety." (*Id.*, p. 17). Questions of foreseeability are within the province of the trier of fact. *See Ferlito v. Johnson & Johnson Products, Inc.*, 771 F. Supp. 196, 200 (E.D. Mich. 1991); *Raines v. Colt Indus., Inc.*, 757 F. Supp. 819, 826 (E.D. Mich. 1991). As such, Dr. Buc's and Mr. Hunt's opinions on foreseeability should be excluded.

Dr. Buc also opines that FXI was "in clear violation of the Building Code." (Ex. M., p. 12). Not only is this an improper legal conclusion which should be excluded, but it is wrong. As pointed out by Defendant's expert, Dr. Don Hoffman, the Michigan Residential Code does not require any fire-resistance for roof coverings in a single family home where the edge of the roof is more than three feet from the lot line, or for walls more than five feet from the lot line.

Finally, Mr. Hunt opined that Kevin Kwiatkowski was using the Product in its "intended and foreseeable manner." (Ex. K, p. 18). Again, this is a determination that the jury can make based on the facts and evidence, and it is improper for Mr. Hunt to apply the facts to the law in this manner.

## IV.   Dr. Buc's Improper Opinions on Standards and Regulations Should Be Excluded

An expert also makes an improper legal conclusion when he or she "defines the governing legal standard." *Keyes*, 335 F. Supp. 3d at 959. Nonetheless, Dr. Buc claims in her report and testimony that the Michigan Building Code applies in this case, and that FXI was "in clear violation of the Building Code." (Ex. M, p. 12). As noted above, this is a blatant and improper legal conclusion. It is also improper for Dr. Buc to opine as to the law that applies to this case. Whether or not the Building Code applies is a question of law for the Court, and expert testimony on this point is neither helpful nor appropriate.

Moreover, all of Plaintiff's experts admitted there are no industry standards or regulations that apply to gutter foam. (Ex. H, 110:3-20; 111:9-24; 113:8-12; 136:4-12; 186: 25-187:5; 200:3-9; Ex. I, 57:12-58:4;  Ex. L, 56:13-18, 85:19-86:8, 147:4-9). Dr. Buc cites to various flammability tests and standards throughout her report, which have no applicability here. (Ex. M, pp. 10-12). Such opinions and testimony regarding tests and standards that have no bearing on the Product should be excluded as not relevant, and an improper attempt to define the legal standard.

-14-

## V.   Mr. Hunt's Opinions Regarding Sparklers Should be Excluded

Mr. Hunt's report contains numerous unsupported statements about sparklers that are not based on any testing or facts, and should be excluded. His report states:

> While it is true that sparklers can burn at temperatures in excess of 2000 F, there is very little heat energy in a sparkler. This requires only an understanding of undergraduate thermodynamics and can be demonstrated by placing a lighted sparkler onto a piece of fire resistant carpet.

(Ex. K, p. 16). Mr. Hunt does not explain in his report what "heat energy" is, nor does he explain the supposedly simply concepts of "undergraduate thermodynamics" upon which he relies. Further, Mr. Hunt actually admits during his deposition that "the actual wire itself, while it's still burning, certainly can be a source of ignition." (Ex. L, 38:7-11).

The demonstration he conducts by placing a lit sparkler against a fire resistant carpet is completely irrelevant to the Product at issue. (Ex. K, pp. 16-17). The Product in this case was a foam gutter guard product without any fire retardant coating. Mr. Hunt's "test" was performed on a carpet, made up of unknown materials, that was apparently fire-resistant and therefore did not ignite. That a fire-resistant carpet did not burn when exposed to a sparkler is not at all relevant to the question of whether a lit sparkler could ignite foam gutter guard products.

Mr. Hunt's testimony is not reliable, not relevant, unsupported, and should be excluded.

**VI.** **Dr. Buc's Unsupported Opinions Regarding A Reduction in the Fire Resistance of Nearby Materials Should Be Excluded**

Dr. Buc's report contains an opinion that "FXI's gutter foam reduced the fire resistance of otherwise approved roof covering and building materials used in the construction of the Kwiatkowski home." (Ex. M, p. 13). However, Dr. Buc's report and deposition testimony fails to provide any further explanation, testing, or other support for this point. Absent any such support, this opinion should be excluded.

**CONCLUSION**

For the foregoing reasons, FXI respectfully requests that the Court grant the instant Motion and exclude the improper expert opinions of Dr. Elizabeth C. Buc, Ruston M. Hunt, and James Maxwell, and deem any testimony related thereto inadmissible.

Respectfully submitted,

**FXI, INC.**

By: */s/Matthew G. Berard*
Matthew G. Berard (P77024)
Bowman & Brooke
41000 Woodward Ave., Ste. 200 E.
Bloomfield Hills, MI 48304-5132
matthew.berard@bowmanandbrooke.com

LEGAL\44197732\1

## **CERTIFICATE OF SERVICE**

That on December 30, 2019, the undersigned hereby certifies that the foregoing document in the above-captioned proceeding has been filed through the ECF e-file system, and automatically served on all counsel of record.

/s/*Matthew G. Berard*

LEGAL\44197732\1