## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CITIZENS INSURANCE COMPANY
OF AMERICA,

                Plaintiff,

                                        Case No. 18-cv-12076

     v.                              Hon. Matthew F. Leitman

FXI, INC.,

                Defendant

_____/

### ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 36) AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY (ECF No. 35)

This action arises out of a fire that burned down the home of Kevin Kwiatkowski. Kwiatkowski insured his home with Plaintiff Citizens Insurance Company of America, and Citizens paid over $1.2 million to repair and rebuild the home. Citizens brings this action against Defendant FXI, Inc., as the subrogee of Kwiatkowski. Citizens contends that FXI is liable for the fire-related damages because a foam gutter guard manufactured by FXI ignited and caused the fire. (*See* First Am. Compl., ECF No. 13.) Citizens alleges that FXI was negligent and that FXI breached certain express and implied warranties. (*See id.*)

FXI now seeks summary judgment on Citizens' claims. (*See* Mot. for Summ. J., ECF No. 36.) It has also moved to exclude certain opinion testimony by Citizens'

1

expert witnesses. (*See* Mot. to Exclude, ECF No. 35.)  For the reasons that follow, both of FXI's motions are **GRANTED IN PART AND DENIED IN PART**.

## I

### A

FXI is a manufacturer of polyurethane foam products. (*See* Dep. of Marc Albero, FXI Senior Director, ECF No. 36-2, PageID. 542-543.)  In 2012, FXI manufactured and sold at retail stores a product called the "Rain Filter." (*See id.*, PageID.545; *see also* Rain Filter Marketing Materials, ECF No. 38-3.)  The Rain Filter is a gutter guard that is designed to keep leaves, insects, and debris from accumulating in gutters. (*See id.*)

FXI included a one-page written warranty with every Rain Filter that it sold. In that warranty, FXI promised that it would repair, replace, or refund the purchase price of the Rain Filter if it had any "defects in material and workmanship in the course of manufacture." (Warranty, ECF No. 36-6.)  The warranty also included a section under the heading "What Doesn't This Warranty Cover?" (*Id.*)  In that section of the warranty, FXI said that the warranty did not cover, among other things, "damage of any kind resulting from … fire, … warming[,] or distortion due to exposure to excessive heat sources." (*Id.*)  Finally, the warranty stated, in all capital letters, that "OTHER THAN THE WARRANTIES EXPRESSLY PROVIDED HEREIN, [FXI] MAKE[S] NO WARRANTIES, EXPRESS OR IMPLIED,

2

REGARDING THE QUALITY OR PERFORMANCE OF THE [RAIN FILTER], INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**"** (*Id.*)

## B

Kevin Kwiatkowski owns a home in Oakland Township, Michigan. (K. Kwiatkowski Dep., ECF No. 38-10, PageID.1217.) In 2016, he insured his home with Citizens.

On May 24, 2012, Kwiatkowski purchased a Rain Filter gutter guard for his home from a local Costco. (*See* Receipt, ECF No. 36-18.) He then installed the Rain Filter on his roof. (*See* K. Kwiatkowski Dep., ECF No. 38-10, PageID.1221.) From 2012 until 2016, the Rain Filter kept Kwiatkowski's gutters clear from debris. (*See id.*, PageID.1221-1222.)

On July 11, 2016, Kwiatkowski's then fourteen-year-old son Pierson was playing with sparklers in Kwiatkowski's driveway. (*See* Pierson Kwiatkowski Dep., ECF No. 38-1, PageID.1093.) Pierson then "threw [a lit] sparkler up in the air and it landed on the roof" of Kwiatkowski's home. (*Id.*) The sparkler landed on the shingles, "3 or 4 inches above the [gutter]," and it then "rolled into [the gutter]." (*Id.*, PageID.1095.) Fifteen seconds later, Pierson saw that the roof of the home had caught fire. (*See id.*)

The fire caused substantial damage to Kwiatkowski's home.  After the fire, Kwiatkowski filed an insurance claim with Citizens. Citizens then paid over $1.2 million to repair the home and approximately $350,000 in personal property losses. (*See* K. Kwiatkowski Dep., ECF No. 38-10, PageID.1230.)

C

Citizens, as the subrogree of Kwiatkowski, filed this action against FXI on June 5, 2018 in the Oakland County Circuit Court. (*See* Compl., ECF No. 1-2.)  FXI then removed the action to this Court. (*See* Notice of Removal, ECF No. 1.)

Citizens filed a First Amended Complaint on November 19, 2018. (*See* First Am. Compl., ECF No. 13.)  In the First Amended Complaint, Citizens brings two claims against FXI under Michigan law.  In Count I, Citizens alleges that FXI was negligent. (*See id.*, PageID.120-121.)  In Count II, Citizens claims that FXI breached its express and implied warranties.  (*See id.*, PageID.121.)

FXI filed a motion for summary judgment on all of Citizens' claims on December 30, 2019. (*See* Mot. for Summ. J., ECF No. 36.)  On that same day, FXI also filed a motion to exclude certain opinions offered by Citizens' expert witnesses. (See Mot. to Exclude, ECF No. 35.)  The Court held a hearing on the motions on June 11, 2020. (*See* Notice of Hearing, ECF No. 41.)

4

## II

### A

The Court first turns to FXI's motion for summary judgment. A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

### B

In Count I of the First Amended Complaint, Citizens alleges that FXI was negligent in two respects[1]: by failing to warn of the fire danger associated with the Rain Filter and by defectively designing the Rain Filter. FXI has moved for

---

[1] Michigan substantive law governs in this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

5

summary judgment on both theories of negligence. The Court will examine each separately.

## 1

The Court begins with Citizens' failure-to-warn claim. "To establish a *prima facie* case of failure to warn" under Michigan law, "a plaintiff must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) the plaintiff suffered damages." *Eiben v. Gorilla Ladder Co.*, 2013 WL 1721677, at *9 (E.D. Mich. Apr. 22, 2013) (citing *Warner v. General Motors, Corp.*, 357 N.W.2d 689, 694 (Mich. App. 1984)). FXI argues that Citizens' failure-to-warn claim fails for three primary reasons: (1) FXI did not have a duty to warn because the risk here was unforeseeable, (2) the gutter guard was not the proximate cause of the fire, and (3) any additional warnings would not have prevented the fire because Kwiatkowski would not have read them. None of these theories entitle FXI to summary judgment on Citizens' failure-to-warn claim.

## a

FXI first argues that it did not have a duty warn Kwiatkowski that the Rain Filter could ignite because "the manner in which the fire occurred was completely unforeseeable." (Mot. for Summ. J., ECF No. 36, PageID521.) More specifically, FXI contends that nobody reasonably could have foreseen that the Rain Filter would

come into contact with a lit sparkler thrown onto a roof. (*See id*. at PageId.521.)  The Court declines to grant summary judgment on this basis.

FXI's foreseeability analysis defines the risk too narrowly. "[F]oreseeability is not a term of precision." *Tropea v. Shell Oil Co.*, 307 F.2d 757, 766 (1962).  On the contrary, "[a]ll authorities agree that the specific risk or consequence which occurred need not have been foreseen for the court to impose liability. Instead all that is required for liability is that the risk of injury to the plaintiff be foreseeable in a general way." *Id.* (holding that "plaintiff and his injury were within the scope of [defendant's] duty not to create a foreseeable risk of danger" even where defendant did "not foresee the exact manner in which the dumping of the waste liquid would cause a fire").[2]  Michigan appears to follow this general rule.  Indeed, the Michigan Supreme Court has explained that "[a] plaintiff need not establish that the mechanism of injury was foreseeable or anticipated *in specific detail*. It is only necessary that the evidence establishes that some injury to the defendant was foreseeable or to be anticipated." *Shultz v. Consumers Power Co.*, 506 N.W.2d 175, 179 n.7 (Mich. 1993) (emphasis added). *See also Hiner v. Mojica*, 722 N.W.2d 914, 921 n.3 (Mich. App. 2006) (reversing trial court's grant of summary disposition on

---

[2] "On the other hand, of course, the definition of the relevant risk must not be drawn too broadly, otherwise there would be virtually no limitation on the scope of the defendant's duty." *Tropea,* 307 F.2d at 766.

negligence claim, disagreeing with trial court's conclusion that plaintiff's injury was not foreseeable, and noting that "the inability to foresee the *precise* manner in which the injury occurred is not fatal to plaintiff's negligence claim") (emphasis in original); *Lockridge v. Oakwood, Hosp.*, 777 N.W.2d 511, 515 (Mich. App. 2009) (reaffirming that "in a typical negligence case, a plaintiff need not establish that the mechanism of injury was foreseeable or anticipated in specific detail. It is only necessary that the evidence establishes that *some injury* to the plaintiff was foreseeable or to be anticipated.") (internal quotation marks omitted; emphasis in original).

Thus, the question here is not whether the precise risk of a teenager throwing a lit sparkler onto the roof was foreseeable. Instead, the question is whether FXI reasonably could have foreseen that some airborne heat source – such as a firework, an ember from a fire pit or chimney, or ash from a burning pile of leaves in the fall – would come into contact with the foam inside the Rain Filter. And that risk was reasonably foreseeable. It is common knowledge that Americans light off a variety of fireworks to celebrate the Fourth of July and other special occasions, and it is foreseeable that a flaming ember or other component of an errant firework may end up on a homeowner's roof and roll into a gutter. Indeed, FXI itself promotes that another of its gutter guard products will not "burn if exposed to heat or fire" that is

"equivalent to sustained exposure … to fireworks."[3] ("Frequently Asked Questions (FAQs) GutterClear 365," ECF No. 44, PageID.1494.)  That FXI has affirmatively introduced the idea that one of its gutter guard products could withstand heat and fire like that from a firework underscores that the risk of embers from fireworks ending upon on a roof and gutter is foreseeable.[4]

For these reasons, the Court concludes that FXI is not entitled to summary judgment on the ground that the risk here was not foreseeable as a matter of law.

**b**

FXI next argues the gutter foam in the Rain Filter was the not the proximate cause of the fire for two reasons.  FXI is not entitled to summary judgment on either ground.

First, FXI asserts that Pierson's act of throwing a sparkler onto the roof of Kwiatkowski's home was a "superseding cause" of the fire. Under Michigan law:

---

[3] The quote above comes from a promotional "Frequently Asked Questions" document for FXI's "GutterClear 365" gutter guard product.  The GutterClear 365 is the successor to the Rain Filter. (*See* Mot. for Summ. J., ECF No. 36, PageID.515: "FXI replaced Rain Filter in 2013 with Gutter Clear 365.")

[4] In its supporting brief, FXI implies that sparklers are a more intense heat source from other, airborne fireworks.  But while FXI has directed the Court to evidence concerning the temperature ranges at which fireworks burn (*see* Mot. for Summ. J., ECF No. 36, PageID.518, citing expert report of Dr. Donald Hoffman, ECF No. 36-12, PageID.644), it has not directed the Court to evidence that the embers of other fireworks burn at a materially lower temperature.

> [The] chain of causation between the defendant's conduct and the plaintiff's injuries may be broken by an intervening or a superseding cause. An intervening cause is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.  An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable. Thus, the issue of proximate causation requires focusing on whether the result of conduct that created a risk of harm and any intervening causes were foreseeable.

*Auto Owners Ins. Co. v. Seils*, 871 N.W.2d 530, 545 (Mich. App. 2015) (internal quotation marks and citations omitted).  FXI asserts that Pierson was a "superseding cause" of the fire because, "disregarding all warnings on the sparkler package, [he] intentionally threw a lit sparkler, a product not intended to fly, high onto a roof which rolled into a roof gutter, exposing any material it touched to temperatures of up to 2,000 degrees." (Mot. for Summ. J., ECF No. 36, PageID.522.)  And FXI insists that it "could not have foreseen that such an intense heat source would be deliberately thrown high into the air and into the rooftop gutter. Pierson's acts were an unforeseeable, superseding cause which relieves FXI of any liability." (*Id.*)  But for all of the reasons stated above, the risk here was reasonably foreseeable.  Thus, Pierson's conduct was not a superseding cause of the harm.

Second, FXI contends that it is pure speculation to conclude that the foam inside the Rain Filter was the proximate cause of the fire.  But Citizens has offered more than speculation to support its theory that the fire was caused by the ignition

10

of the foam in the Rain Filter.  Indeed, it has presented both eyewitness and expert testimony that the fire was caused by the sparkler igniting the foam inside the gutter guard, not any other cause.   Most importantly, Citizens produced the expert testimony of materials scientist Dr. Elizabeth Buc.  Dr. Buc opined that the other materials on Kwiatkowski's roof in the vicinity of the sparkler – such as the asphalt shingles and wood – have too much thermal inertia to readily ignite when exposed to a sparkler for a limited period of time. (*See* Dr. Buc Dep., ECF No. 38-17, PageID.1354, 1359.).  By process of elimination, Dr. Buc's expert testimony points the finger directly at the foam in the Rain Filter as the cause of the fire.  Her testimony takes Citizen's causation theory outside of the realm of speculation and creates a genuine issue of a material fact for trial on the proximate cause of the fire. Moreover, Pierson Kwiatkowski testified that the lit sparkler landed on the roof and rolled directly into the gutter before the fire began (*see* P. Kwiatkowski Dep., ECF No. 38-1, PageID.1095), and that testimony further suggests that the foam in the gutter was the initial source of ignition.

### c

Finally, FXI argues that even if it had provided additional warnings to Kwiatkowski, the fire would still have occurred because Kwiatkowski would not have read those warnings. (*See* Mot. for Summ. J., ECF No. 36, PageID.532.)  But Kwiatkowski testified that had FXI included a warning that the Rain Filter was not

fire retardant, then he would have read the warning and "would definitely not have bought" the Rain Filter. (Kwiatkowski Dep., ECF No. 38-10, PageID.1232.)  That testimony is enough to defeat FXI's theory that, as a matter of law, the missing warnings would not have made a difference.

For all of these reasons, FXI is not entitled to summary judgment on Citizens' failure-to-warn claim.

## 2

The Court next addresses Citizens' design defect claim.  FXI is entitled to summary judgment on that claim.

"Michigan has adopted what its courts have come to call the 'risk-utility' test for determining whether a plaintiff has made out a case for a product liability claim based upon a claimed design defect." *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617 (6th Cir. 2001).  In order to prevail on a design defect claim under Michigan law, a plaintiff must establish that:

> (1) the severity of the injury was foreseeable by the manufacturer;
>
> (2) the likelihood of occurrence of [the plaintiff's] injury was foreseeable by the manufacturer at the time of distribution of the product;
>
> (3) there was a reasonable alternative design available;
>
> (4) the available alternative design was practicable;

12

> (5) the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and
>
> (6) the omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Id.* at 617-18.   This test places a "heavy burden" on plaintiffs. *Dow v. Rheem Mfg. Co.*, 2011 WL 4484001, at \*17 (E.D. Mich. Sept. 26, 2011).

Citizens' design-defect claim fails as a matter of law at element five of the risk-utility test.  Simply put, Citizens has not carried its "heavy burden" to show that there was an "available and practicable reasonable alternative design that would have reduced the foreseeable risk" of the Rain Filter catching fire.  That failure is fatal to Citizens' design-defect claim.

Citizens counters that it has identified such an available and reasonable alternative design.  Citizens highlights that for a period of time, FXI *did* manufacture the Rain Filter with a fire-retardant coating. (*See* Resp. Br., ECF No. 38, PageID.1082.)  Citizens says that this history conclusively demonstrates that there was an available and practicable design of the Rain Filter that would have reduced the risk of fire. (*See id.*)  But the testimony of Citizens' own expert, Dr. Buc, belies this argument. Dr. Buc testified that the fire-retardant coating FXI once applied to the Rain Filter would only have prevented a fire from a "small sparkler" in a single

specific and "perfect scenario."[5] (Dr. Buc. Dep., ECF No. 38-17, PageID.1361.) Otherwise, the coating would not necessarily prevent a fire. (*See id.*) Thus, Citizens has not presented sufficient evidence that the alternative design at issue – a gutter guard with the identified fire-retardant coating – would have meaningfully reduced the foreseeable risk of harm. Accordingly, FXI is entitled to summary judgment on Citizens' design-defect claim.

C

In Count II of the First Amended Complaint, Citizens seeks damages for FXI's alleged breach of implied warranties.[6] FXI is entitled to summary judgment that claim.

Under Michigan law, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer

---

[5] Dr. Buc explained that this "perfect scenario" involved a gutter guard where the foam was "coated, flat, [had] no gaps, [was] no[t] pulling away from the gutter, and [had] not deteriorated to the point [where] the coating [was] no longer effective." Dr. Buc. Dep., ECF No. 38-17, PageID.1361.) And she confirmed that this "perfect scenario" did not exist here because, among other things, the gutter foam had deteriorated and formed gaps. (*See id.*, PageID.1363.)

[6] Citizens also brought a claim against FXI for breaching FXI's express warranty. Citizens withdrew that claim at the hearing on FXI's summary judgment motion. Even if Citizens had not withdrawn the claim, the Court would have granted summary judgment in favor of FXI on the express warranty claim because FXI did not expressly warrant that the Rain Filter would not catch fire. The Court therefore **GRANTS** FXI summary judgment with respect to Citizens' breach of express warranty claim.

is relying on the seller's skill or judgment to select or furnish suitable goods, there is[,] unless excluded or modified under the next section[,] an implied warranty that the goods shall be fit for such purpose." Mich. Comp. Laws § 440.2315. "However, Michigan law allows this warranty to be disclaimed 'by general language ... if it is in writing and conspicuous.'" *Michigan Dessert Corp. v. A.E. Staley Mfg. Co.*, 23 F. App'x 330, 335 (6th Cir. 2001) quoting Mich. Comp. Laws § 440.2316, Cmt. 4. *See also Zanger v. Gulf Streams Coach, Inc.*, 2005 WL 3416466, at *4 (E.D. Mich. Dec. 13, 2005) ("There is no dispute that a seller may disclaim implied warranties under Michigan law as long as the disclaimer is conspicuous").

Here, the disclaimer of the implied warranties was both in writing and conspicuous.  As described above, that disclaimer was included in a section of the one-page warranty titled "What Doesn't This Warranty Cover." (*See* Warranty, ECF No. 36-6.)  In addition, the specific disclaimer of the implied warranty was in all capital letters in the only paragraph of the warranty that included writing in "ALL CAPS."  Under these circumstances, FXI sufficiently disclaimed the existence of any implied warranties.

Citizens counters that the disclaimer here was unconscionable. (*See* Resp. Br., ECF No. 38, PageID.1084-1085.)  In support of that argument, it relies almost entirely on the Michigan Court of Appeals' decision in *Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 620 (Mich. App. 1986).  In *Latimer*, the Michigan Court

of Appeals held that an attempted disclaimer of an implied warranty was unconscionable. *See id.*   But *Latimer* is materially distinguishable.  In *Latimer*, the Michigan Court of Appeals held that the disclaimer in that case was unconscionable where it was "insufficiently conspicuous," was not in all capital letters, and was included under the confusing heading "warranty." *Id.* at 625.  Here, in sharp contrast, the disclaimer is conspicuous, was in all capital letters, and was included in a section of the warranty titled "What Doesn't This Warranty Cover."  The Court is therefore not persuaded that the disclaimer of warranties here is unconscionable under *Latimer*.

In the alternative, even if FXI had not properly disclaimed any implied warranties, FXI would still be entitled to summary judgment on Citizens' breach of implied warranty claim.   Under Michigan law, "[a]lthough breach of implied warranty and design defect are distinct theories of recovery, 'in an action against the manufacturer of a product based upon an alleged defect in its design, breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements.'" *Peak v. Kubota Tractor Co.*, 559 F. App'x 517, 524 (6th Cir. 2014) (quoting *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1984)).   "Thus, 'the only time the distinction between implied warranty and negligence may have any significance in design defect cases, is in determining the liability of a seller who is not also the manufacturer.'" *Id.* (quoting *Prentis*, 365

N.W.2d at 186 n.30).  Here, for all of the reasons stated above, Citizens has failed to establish a viable design defect claim because it has not identified an alternative design that would have meaningfully reduced the foreseeable risk of harm. Therefore, FXI is entitled to summary judgment on Citizens' breach of implied warranty claim.

### III

The Court now turns to FXI's motion to exclude certain opinions and testimony offered by Citizens' expert witnesses. (*See* Mot. to Exclude, ECF No. 35.) The Court will analyze separately each opinion that FXI seeks to exclude.

### A

The admissibility of expert testimony is governed by Federal Rule of Evidence 702.  That rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702.

Under this rule, district courts have "broad discretion as [] 'gatekeeper[s]' to determine the admissibility" of expert testimony. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). In assessing proposed expert testimony, a district court must "determine whether [the] evidence 'both rests on a reliable foundation and is relevant to the task at hand.'" *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th. Cir. 2012) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

In *Daubert*, the Supreme Court stressed that there is no "definitive checklist or test" that a district court must apply when considering the reliability of expert testimony. *Daubert*, 509 U.S. at 590. Yet, at the same time, the Supreme Court identified "several factors that a district court should consider when evaluating the scientific validity [and reliability] of expert testimony, notably: the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community." *Pride*, 218 F.3d at 577 (citing *Daubert*, 509 U.S. at 593-94).

The *Daubert* "factors, while perhaps most apt in evaluating a purely scientific discipline, can also apply in evaluating non-scientific fields that are 'technical' or 'specialized' in nature." *United States v. Mallory*, 902 F.3d 584, 593 (6th Cir. 2018) (quoting *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-53 (1999)). However, these factors may not be useful in evaluating the reliability of some types of expert testimony, and thus applying the "factors [is] not mandatory in every case." *Id.*

Finally, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit evidence that is connected to existing data by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In the end, "[t]he questions of what factors to apply and what conclusions to draw about an expert's reliability are entrusted to the district court's discretion." *Mallory*, 902 F.2d at 593; *see also Kuhmo Tire*, 526 U.S. at 141 ("[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.").

**B**

FXI first argues that the Court should exclude the causation opinion testimony of Citizens' experts Dr. Buc and fire investigator James Maxwell. FXI insists that this testimony is "purely speculative and should be excluded." (Mot. to Exclude, ECF No. 35, PageID.248.) The Court agrees in large part with respect to Maxwell

and excludes most of his causation opinions.  But it disagrees with respect to Dr. Buc and will admit her causation testimony.

The Court begins with Maxwell's opinions.  Maxwell is a fire investigator whom Citizens retained to investigate the cause of the fire. (*See* Resp. to Mot. to Exclude, ECF No. 37, PageID.901.)  As part of his work, Maxwell conducted a number of tests in which he attempted to ignite various materials with a sparkler. (*See id*; *see also* Maxwell Rpt., ECF No. 35-11, PageID.350)  Among other things, Maxwell used a sparkler in an attempt to ignite (1) "foam from the actual gutter" that was on Kwiatkowski's roof, (2) plywood, (3) oriented strand board, and (4) corrugated board. (*Id.*)  In Maxwell's tests, foam from the actual gutter "readily ignited and sustained combustion." (*Id.*, citing Maxwell Dep., ECF No. 37-10, PageID.1003-1004; *see also* Maxwell Rpt., ECF No. 35-11, PageID.350.)  None of the other "materials sustained flaming combustion during the testing." (Maxwell Rpt., ECF No. 35-11, PageID.350.)

To the extent that Maxwell's causation opinions rely upon his testing of plywood, oriented strand board, and corrugated board, the Court will exclude that testimony and any reference to that testing because those opinions are not based on a reliable foundation.  The plywood, oriented strand board, and corrugated board that Maxwell tested did not come from Kwiatkowski's roof.  Nor is there sufficient evidence in the record that the materials on the roof were of the same kind or quality

that Maxwell tested.  Testing materials not found on Kwiatkowski's roof and not sufficiently linked to the materials that were actually on the roof does not provide a reliable foundation for an opinion concerning the cause of the fire.  Simply put, Citizens has not sufficiently and reliably connected Maxwell's testing of these other materials that were not found on the roof to what actually caused the fire here.  Thus, the Court will exclude Maxwell's causation opinions to the extent they are based on the testing of plywood, oriented strand board, and corrugated board.[7]

In contrast, the Court concludes that Dr. Buc's causation opinions rest upon a sufficiently reliable foundation.  As described above, Dr. Buc concluded that the Rain Filter gutter guard caused the fire here based on the principles of "thermal inertia." (*See* Buc Dep., ECF No. 38-17, PageID.1354, 1359.)  As Dr. Buc explained, based on thermal inertia, a sparkler could not ignite the type of plywood and asphaltic shingles on the roof of Kwiatkowski's home because "[y]ou have to have a sufficient energy source to ignite a solid fuel which does not exist for a sparkler on a solid fuel like asphaltic shingle[s]" or plywood. (*Id.*, PageID.1359.)  And she testified that that would be true no matter the thickness or orientation or manufacturer of the plywood and shingles on the roof. (*See id.*)  Dr. Buc further

---

[7] Prior to trial, the Court will determine which portions, if any, of Maxwell's causation testimony are not tainted by his testing of the materials not found on Kwiatkowski's roof.  The Court may end up excluding his causation testimony in its entirety.

testified that in order to ignite the kind of asphaltic shingles on Kwiatkowski's roof, one would need "a substantial fire source such as a gas flame or a burning foam in the gutter." (*Id.*)

Dr. Buc's opinion testimony regarding thermal inertia and the cause of the fire is based on a reliable foundation.  That testimony is based on Dr. Buc's over twenty-three years of experience "performing loss investigations, both in the field and in the laboratory" and her long experience "characterizing the fire performance of solid, liquid, and gaseous materials, including foam." (Dr. Buc Rpt., ECF No. 35-14, PageID.454.) It was also based her personal testing of foam found in the Rain Filter gutter guard. (*See* Dr. Buc. Rpt., ECF No. 35-15, PageID.456-458.)  Moreover, FXI's own expert Dr. Donald Hoffman agreed with Dr. Buc that under the principles of thermal inertia, the foam inside the Rain Filter gutter guard "would be likely more easy to ignite" than the wood on Kwiatkowski's roof. (Dr. Hoffman Dep., ECF No. 37-13, PageID.1030.)  Based on all of these facts, the Court concludes that Dr. Buc's testimony is sufficiently reliable.  Any objections FXI has to the reliability of Dr. Buc's conclusions may be explored during the cross examination of Dr. Buc at trial.

## C

FXI next argues that the Court should exclude the opinion of Citizens' expert Ruston Hunt that if FXI included warnings about the risk of fire with the Rain Filter, then Kwiatkowski would not have bought the product or would have taken steps to

mitigate the fire risk. (*See* Mot. to Exclude, ECF No. 35, PageID.252-254.)  The Court agrees and excludes that testimony.

Hunt is a "human factors engineering expert." (Resp. to Mot. to Exclude, ECF No. 37, PageID.901.)  Citizens retained him "to conduct an investigation relating to human factors, warnings and instructions." (*Id.*)  Hunt then conducted a nine-step process for human factors analysis. (*See id.*, PageID.902.)  He concluded, among other things, that "FXI was aware Rain Filter exposed users to a flammability hazard" and "the materials [included with the Rain Filter] should have clearly warned of the flammability hazard." (*Id.*, citing Hunt Rpt., ECF No. 35-12.)  At his deposition, Hunt testified that it was reasonable to believe that Kwiatkowski would "either not [have bought] the [Rain Filter] product or take[n] some stemehow mitigate the hazard" had FXI included sufficient warnings about the flammability of the Rain Filter. (Hunt Dep., ECF No. 35-13, PageID.446-447.)

The Court excludes this testimony by Hunt for two reasons.  First, it is essentially an opinion that Kwiatkowski is telling the truth when he says that he would have read the warnings and refrained from buying the Rain Filter.  The jury is the sole judge of the credibility of Kwiatkowski's testimony; it is not for an expert to confirm the veracity of Kwiatkowski's testimony that he would have acted differently had FXI included a fire warning.  Second, the testimony is unduly speculative.  Hunt admitted at his deposition that he never met or spoke with

Kwiatkowski, that he did not research what other fire prevention activities Kwiatkowski had engaged in related to his home, and that he did not research Kwiatkowski's fire safety behavior prior to the fire or Kwiatkowski's previous use of flammable consumer products. (*Id.*, PageID.449-450.)   Thus, Hunt lacked a reliable basis on which to determine how Kwiatkowski would have reacted to a fire warning on the Rain Filter.  In sum, Kwiatkowski may testify about how additional warnings would have affected his behavior; Hunt may not.

### D

FXI next asserts that Citizens' "expert reports are full of legal conclusions and opinions on ultimate issues in the case that should be excluded." (Mot. to Exclude, ECF No. 35, PageID.254.)  Citizens agrees that "both parties' experts should not be permitted to provide opinion testimony equating to legal conclusions." (Resp. to Mot. to Exclude, ECF No. 37, PageID.910.)  The Court therefore will grant FXI's motion to exclude to the extent that it seeks to prevent experts from providing legal conclusions and opinions.  At the final pretrial conference, the Court will work with the parties to identify the specific legal conclusions from all experts that should be excluded.

### E

Next, FXI argues that the Court should exclude Dr. Buc's testimony that there are specific standards that apply to flammability tests for the Rain Filter gutter guard.

(*See* Mot. to Exclude, ECF No. 35, PageID.256.)  FXI insists that there are "no industry standards or regulations that apply to gutter foam" (*id.*) and that other standards "that indisputably do not apply are simply not relevant to any issue in this case." (Reply Br., ECF No. 39, PageID.1435; emphasis removed.)  FXI says that Dr. Buc should not be permitted to testify about these irrelevant other standards.

In response, Citizens acknowledges that "there [are] not written standards for such a specific product" like the Rain Filter.  It counters, however, that "there are standards/flammability testing methods applicable for foams" and other building materials. (Resp. to Mot. to Exclude, ECF No. 37, PageID.911.)  And Citizens insists that these standards are sufficiently related to the foam in the Rain Filter that Dr. Buc may testify about them.  Citizens further highlights that FXI, itself, used one of these flammability tests – known as the "pill test" – when it made foam for another manufacturer and when it tested the flammability of its related gutter guard products, the Leaf Defier and the GutterClear 365. (*See id.*)

To the extent that Dr. Buc seeks to testify about industry standards unrelated to the "pill test," the Court will exclude that testimony.  Citizens has not sufficiently shown that those tests are accepted in the industry, that they are a reliable way of assessing the flammability of the particular foam at issue here, or that they will be useful to the jury in determining the cause of the fire.  However, the Court will allow Dr. Buc to testify about the "pill test" and the performance of the Rain Filter foam

in that test.  That testimony does strike the Court as relevant and reliable.  It seems fair and reasonable for Dr. Buc to testify about a standardized flammability test that FXI itself used on its line of foam gutter guard products (even if FXI did not use it specifically for the Rain Filter).  At trial, FXI may cross examine Dr. Buc about the efficacy of the "pill test" and how often it is used in the industry.

### F

FXI next seeks to exclude Hunt's opinion testimony arising out of a test Hunt performed in which he attempted to light a piece of fire-resistant carpeting on fire with a sparkler. (*See* Mot. to Exclude, ECF No. 35, PageID.257.)  Hunt used this test to show that a fire-resistant product will not burn when it comes into contact with a lit sparkler.  FXI argues that the fact "a fireresistant carpet did not burn when exposed to a sparkler is not at all relevant to the question of whether a lit sparkler could ignite foam gutter guard products." (*Id.*)  The Court agrees.

Put simply, whether a sparkler did or did not ignite a piece of carpet is not a reliable basis for an opinion related to what caused the fire here.  This fire had nothing to do with carpet – it started on the uncarpeted roof of Kwiatkowski's home, not his carpeted living room or den.  Citizens counters that Hunt's carpet test is "relevant to show that a product can be manufactured in a fire resistant manner that will resist ignition from a sparkler." (Resp. to Mot. to Exclude, ECF No. 37, PageID.914.)  But the question here is whether *the foam in the Rain Filter* would

have resisted a fire if it had been coated with a fire retardant, not whether some other product resisted a fire when so coated.  And Citizens has not sufficiently established that the effect of fire retardant on carpeting is the same (or materially similar to) the effect of such retardant on gutter foam. The Court will therefore exclude Hunt's testimony related to the carpet test.

## G

Finally, FXI argues that the Court should exclude Dr. Buc's opinion that "FXI's gutter foam reduced the fire resistance of otherwise approved roof covering and building materials used in the construction of the Kwiatkowski home." (Mot. to Exclude, ECF No. 35, PageID.258.)  It says that the Court should bar that opinion because "Dr. Buc's report and deposition testimony fails to provide any further explanation, testing, or other support for this point." (*Id.*)

Dr. Buc made the challenged statement in her expert report. (*See* Dr. Buc Rpt., ECF No. 35-15, PageID.454.)  But at her deposition, Dr. Buc clarified this statement. She testified that instead of reducing the fire resistance of the materials on Kwiatkowski's roof, the gutter foam "compromised" those materials:

> Q: Did the sparkler igniting whatever it ignited at the home reduce the fire resistance of other approved roof covering and building materials?
>
> [….]

> A: It compromised other materials that are required to have some fire resistance from small ignition sources like firebrands, etc.
>
> Q:  By compromise, is that different than reducing fire resistance?
>
> A: Yes.
>
> Q:  What do you mean by compromise then?
>
> A:  Because we want to have some fire resistance for building materials from small ignition sources.  This, once ignited, was a large ignition source for the building materials with which it was in contact.

(Dr. Buc Dep., ECF No. 38-17, PageID.1373.)

Based on this testimony, it is now clear that Dr. Buc will not testify that the gutter foam reduced the fire resistance of the other materials on the roof.  Instead, she will testify that the gutter foam "compromised" those materials and that "compromised" means something other than "reducing fire resistance."  FXI has not persuaded the Court that Dr. Buc's testimony regarding how the gutter foam "compromised" the other materials on the roof should be excluded.  The Court will therefore allow that testimony.

## IV

For all of the reasons stated above, FXI's motion for summary judgment (ECF No. 36) and motion to exclude expert testimony (ECF No. 35) are **GRANTED IN PART AND DENIED IN PART** as set forth in this order.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 1, 2020


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 1, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764