1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


CITIZENS INSURANCE COMPANY OF
AMERICA, as Subrogee of Kevin
Kwiatkowski,

          Plaintiffs,

v.                                  File No. 18-12076

FXI, INCORPORATED,

          Defendants.
_____/



DEFENDANT'S MOTION IN LIMINE TO BAR PLAINTIFF

FROM PRESENTING EVIDENCE OR SEEKING RECOVERY OF THE

COSTS TO REPAIR OR THE DIMINUTION IN VALUE OF THE DWELLING



BEFORE THE HONORABLE MATTHEW F. LEITMAN

United States District Judge

United States Courthouse

600 Church Street

Flint, Michigan  48502

Friday, January 21, 2022

2

APPEARANCES:

For the Plaintiffs:        GLENN WILLIAM MATTAR
                           Denenberg Tuffley PLLC
                           28411 Northwestern Hwy, Ste 600
                           Southfield, MI 248-593-5808
                           (248)549-3900
                           Email: gmattar@dt-law.com


                           BRUCE N. MOSS
                           Denenberg Tuffley PLLC
                           28411 Northwestern Hwy.
                           Suite 600
                           Southfield, MI 48034
                           248-549-3900
                           Email: BMoss@dt-law.com



For the Defendants:        JAMES G. ARGIONIS
                           Cozen O'Connor
                           123 N. Wacker Drive
                           Suite 1800
                           Chicago, IL 60606
                           312-474-7904
                           Email: jargionis@cozen.com


                           COREY THOMAS HICKMAN
                           Cozen O'Connor
                           123 North Wacker Drive
                           Suite 1800
                           Chicago, IL 60606
                           312-474-4473
                           Email: chickman@cozen.com



To Obtain a Certified Transcript:

PEG L. GOODRICH, CSR-0258, RMR
Federal Official Court Reporter
www.transcriptorders.com

3

T A B L E   O F   C O N T E N T S

PAGE

PRELIMINARY STATEMENTS:                              4


DISCUSSION AND ARGUMENT ON MOTION:
     By Mr. Mattar                                   5
     By Mr. Argionis                                 11


RULING BY THE COURT:                                 24


CLOSING COMMENTS:                                    30


CERTIFICATE OF COURT REPORTER:                       40

EXHIBITS:                          IDENTIFIED   RECEIVED

     None marked.

4

1                    Friday, January 21, 2022

2                    At 10:32 a.m.

3            (Court, counsel and attendees present via Zoom

4            videoconferencing)

5                    *   *   *   *   *   *   *

6            THE LAW CLERK:  The United States District Court for the

7    Eastern District of Michigan is now in session, the Honorable Matthew

8    F. Leitman, United States District Judge, presiding.

9            The Court calls case No. 18-12076, Citizens Insurance

10   Company of America versus FXI, Incorporated.

11           THE COURT:  All right.  Good morning.  Who is on for the

12   plaintiff, please.

13           MR. MATTAR:  Glenn Mattar and Bruce Moss.

14           THE COURT:  All right.  Which one of you guys will be

15   speaking this morning?

16           MR. MATTAR:  I will be, your Honor.  Thank you.

17           THE COURT:  All right.  Good morning.  And who is on for

18   FXI?

19           MR. ARGIONIS:  Good morning, your Honor.  Jim Argionis and

20   Corey Hickman on behalf of FXI.  And I will be speaking to the

21   motion.

22           THE COURT:  Okay.  So we're here this morning for argument

23   on the motion that FXI filed.  It's called a Motion in Limine to Bar

24   Plaintiff from Presenting Evidence or Seeking Recovery of the Cost to

25   Repair or the Diminution in Value of the Dwelling.  It is docket No.

5

1  54.

2          And even though it's FXI's motion, I would like to start

3  with a couple of questions for Citizens to Mr. Mattar.  So would the

4  rest of you guys mute to avoid feedback, please?

5          All right.  Mr. Mattar, first a question that has nothing to

6  do with the merits of this case.  Did you and Mr. Moss change law

7  firms?

8          MR. MATTAR:  No, your Honor.

9          THE COURT:  Has the name of your law firm always been the

10 same?

11         MR. MATTAR:  Yeah.  I mean for the pendency of this case,

12 yes, your Honor.

13         THE COURT:  Hmm.  Mentally, I had you guys at a different

14 firm.  That means nothing and I hope that you don't think of my law

15 firm confusion as reflecting confusion about the merits of the case.

16 I've got a better -- I've got a better handle on the merits of the

17 case than I do on the law firms here.

18         All right.  So let me start with this.  I'm going to ask

19 you a series of questions, Mr. Mattar, that are very specific and

20 in response, I'm looking for direct and narrow answers to my

21 questions.  I promise to give you a full opportunity to make any

22 arguments you want to make at a later point in the argument.  I'm

23 just starting with my questions because I want to clarify some

24 specific issues.

25         My first question for you is this:  In your response to the

1  motion, you identify a number of categories of evidence that you say

2  establishes the value of the residence that burned down.  And FXI

3  says that a lot of that evidence is not admissible for one reason or

4  another.

5       But setting that aside, FXI makes a broader point, that even

6  if I considered all of that evidence, not one of those items of

7  evidence that you identify in your response establishes that the

8  value of the property prior to the injury exceeded the cost of

9  repairs.  And I think the cost of repairs is somewhere north of 1.2

10  million dollars.

11       Can you point me to any of the evidence that you've

12  identified, assuming all of it is admissible, that would peg

13  the value of the home, pre-injury, as higher than the cost of

14  repairs?

15       MR. MATTAR:  Sure, your Honor.  And just to clarify, the

16  repair costs for the damage of the dwelling, that was a little less

17  than 1.2.  I think it was 1.17, if I'm not mistaken.  And

18  specifically to that point, we did cite to a couple of figures that

19  were higher than that number, including the insurance policy limits,

20  the estimated rebuild cost, the --

21       THE COURT:  Let me stop you for one second.  The estimated

22  rebuild cost, how is that relevant to the value of the home?

23       MR. MATTAR:  Well, in -- you know, appraisers in their

24  field, one of the -- one of the methods that they use to determine

25  the value of a home is the estimated cost to rebuild the home.

7

1       We're not saying that that's definitive of the market value

2   of the home.  We are saying it is some evidence of the value of the

3   home.

4       THE COURT:  Who -- who would link up the point that you just

5   made?  So you would want to introduce into evidence the cost to

6   rebuild.  Standing alone, it's not at all obvious that the cost to

7   rebuild is relevant to the value of the home pre-injury.  There would

8   need to be some testimony or evidence linking that up.

9       Have you identified a witness who will make that bridge for

10  the jury?  I assume that would have to be an expert witness.

11      MR. MATTAR:  We did not disclose an expert witness on that

12  area.  That testimony was planned to have come in through the

13  independent adjuster on the file that came up with these calculations

14  of how much it would cost to rebuild.

15      I would also point out that there is case law that we cited

16  in Michigan that the evidence of the purchase price of a new home is

17  also evidence of the market value of a home.  And the cost to rebuild

18  a damaged home, we think that there is a sufficient link there.

19      But to answer that question directly, I -- I do not believe

20  that an expert was disclosed that would make that express link at

21  trial.

22      THE COURT:  I want to focus very narrowly on this linkage

23  point.

24      MR. MATTAR:  Sure.

25      THE COURT:  So you're telling me that one piece of evidence

1 of the value of the home pre-injury is the post-injury cost to

2 rebuild.  Who -- how do you link that post-injury cost to rebuild to

3 the pre-injury value?

4 　　　　MR. MATTAR:  Well, I think that that testimony can come in,

5 for example, through the homeowner, that, you know, if -- as we -- we

6 identify also in the brief, a homeowner can testify to the value of

7 the home.

8 　　　　THE COURT:  Hold on.  I want to -- I want to separate -- and

9 I have a whole lot of questions about that issue.

10 　　　　MR. MATTAR:  Yeah.

11 　　　　THE COURT:  But while there is some authority for the

12 proposition that a homeowner can testify to the value, this homeowner

13 is not in a position at least as far as I can tell to offer an

14 opinion that the post-injury rebuild is evidence of the pre-injury

15 value.  That -- that strikes me as an expert requirement, right?

16 You -- it's not obvious to me.

17 　　　　Somebody would have to explain that based on some experience

18 or technical knowledge, right?

19 　　　　MR. MATTAR:  Well, I think just from -- more from, I guess,

20 I would say from a common sense standpoint.  I mean, if there is just

21 land there, there is no home there, that -- that the value of the

22 home itself would be -- you know, a comparison would be the cost to

23 build a home from scratch.  I mean, I think there is some linkage

24 there that isn't necessarily from expert witness testimony.

25 　　　　THE COURT:  So the other piece of evidence that you cite

9

1  as -- that the value exceeds the repair cost was the insurance

2  coverage, right?  That was the second thing you said to me?

3         MR. MATTAR:  That's correct, your Honor, yes.

4         THE COURT:  Now, you did cite a case that says that but the

5  case that you cite does nothing more than just say that a United

6  States district judge disagrees with the proposition that insurance

7  coverage amounts aren't relevant to value.

8         Can you give me a reasoned basis why I should conclude that

9  coverage amounts are evidence of value?

10        MR. MATTAR:  Sure.  I think that this would come in through

11 the independent -- I'm sorry -- the Citizens adjuster who adjusted

12 the claim.  And this is also another common sense thing that I think

13 the jury would understand, is, that when you obtain insurance on a

14 home, the insurance company will look into the value of your home to

15 ensure that they are not overinsuring it or underinsuring it.  And I

16 think it's a reasonable inference for the jury to find that an

17 insurance company would not insure a home for 1.4 million dollars if

18 the home is not worth that much.  And Miss Weber would provide

19 additional testimony in that regard.

20        THE COURT:  Okay.  Next question.  Do -- do you have any

21 evidence of the post-fire pre-repair value of the home?  In other

22 words, the fire hits and there's some portion of the home left

23 standing that is subject to being repaired.

24        Do you have any evidence of the value of the home the minute

25 the fire goes out as to what's left there?

10

1        MR. MATTAR:  Direct evidence on that, I do not believe we

2   do.  However, I would just note that there is a case from Kentucky

3   indicating that -- and in some instances, the actual repair costs can

4   be indicative of the change in value.

5        And I'm sorry, I will correct one thing that I just said

6   before, actually.  We would take the position that the repair cost

7   less depreciation actually is indicative of the change in value

8   of the home, so the value of the home after the fire; that taking

9   into account repair costs, less depreciation shows that change in

10  value.

11       THE COURT:  All right.  Let me ask you here, what is the --

12  what is the theory of damages that you want to put to the jury here?

13  Is it, you want to say to the jury, we're entitled to our repair

14  costs.

15       Is that your theory?

16       MR. MATTAR:  Our theory is that -- that we are entitled to

17  repair costs that were capped at whatever the jury determines the

18  market value is.  And again, there's different numbers that we have

19  submitted for both the repair costs and the market value of the

20  home.

21       For example, you know, we have a lower ATV calculation of

22  repair costs of being closer to $700,000 and that's certainly less

23  than the market value.  So, you know, we don't agree with defendant

24  that we are going to be capped at whatever the jury comes back at

25  what the market value is.  But -- yeah, so that's -- that's our

11

1  position on --

2         THE COURT:  Hold on.  You confused me there with the last

3  point.

4         MR. MATTAR:  Sure.

5         THE COURT:  My understanding is from what you started to

6  say there, you would agree that the amount of repair costs that you

7  can recover are capped at the pre-injury market value of the

8  property.

9         You would agree with that, correct?

10         MR. MATTAR:  Yes, your Honor.

11         THE COURT:  Okay.  All right.  Let me turn to Mr. Argionis

12  if I could, for a moment, Mr. Mattar.  And again, I will give you a

13  chance to make arguments in a second but I want to clarify something

14  with Mr. Argionis.

15         Mr. Argionis, your argument here is a very clever one and I

16  certainly give you credit for making it.  My concern is, it's a bit

17  too clever.  The idea that if the plaintiff can't prove that the

18  pre-injury value of the property was higher than the repair costs,

19  they are absolutely barred from getting any repair costs.

20         The -- I understand how the two rules work together but the

21  rule that repair costs can't exceed the pre-injury value of the

22  property, the purpose there is to avoid a windfall in repair costs,

23  right?

24         MR. ARGIONIS:  Correct, your Honor.

25         THE COURT:  All right.  If -- if the plaintiffs had evidence

1  that the pre-injury value of the property was one dollar less than

2  the repair costs that you've identified in your motion, you would

3  agree they could recover all of those repair costs, right?  If they

4  can prove that those repair costs were causally related to the fire,

5  right?  And they won on liability.

6          MR. ARGIONIS:  If the pre-injury value were one dollar more

7  than the repair costs?

8          THE COURT:  Less.  Less.

9          MR. ARGIONIS:  If they were less, then the repair costs

10  exceed the value and we have to get to --

11          THE COURT:  I'm sorry.  You're right.  I asked the wrong

12  question.

13          So the repair costs in this case, you tell me, are roughly

14  1.17 million dollars.  If the plaintiffs had rock solid evidence that

15  the pre-injury value was 1.18 million, just higher than the repair

16  costs, a tiny bit higher, you would agree with me that they could

17  potentially recover all of their repair costs, right?

18          MR. ARGIONIS:  Um, it would -- yes, I think that the cost --

19  what the case law says is that the cost of repair -- well, right.

20  That's -- that's my understanding, that if the value is higher, then

21  you can get the repair costs, although --

22          THE COURT:  So the --

23          MR. ARGIONIS:  -- in those situations, in those situations,

24  your Honor, there tends to be the type of flexibility that Mr. Mattar

25  cited in a lot of the case law.  A lot of those cases were total loss

1  to property and that's where they said, you know, it could be the

2  repair costs or maybe the repair costs minus the depreciation.  I

3  haven't found any case that wasn't a total loss case that did a

4  different analysis than that.

5          THE COURT:  Look, this is what I'm trying to get at.

6  Whatever the -- whatever the value of the home was pre-injury, your

7  theory here is that if the value of the home pre-injury was one penny

8  more than the cost of repairs, then the plaintiff could conceivably

9  recover the full cost of the repairs.  Your -- the next part of your

10  theory is that if the value of the home pre-injury was one penny less

11  than the full cost of repairs, under no circumstances can the

12  plaintiff recover repairs and has to use the diminution of value

13  theory and if they don't have evidence of diminution of value, then

14  they don't get to collect a penny.

15          That's your theory, right?

16          MR. ARGIONIS:  Correct, with the added element that they

17  need to have something to establish that pre-injury value.  And they

18  haven't here.

19          THE COURT:  Look, there's different questions about what

20  their evidence establishes and the impact of your theory.  And the

21  rule that you rely on for why a plaintiff can't get repair damages if

22  the repair costs exceed the value, that's meant to protect a

23  defendant against paying a windfall in repair damages, too much in

24  repair damages.  In other words, the rule in Michigan is, repair

25  damages should never exceed the value of the property.

14

1       Isn't that another way to state the rule?

2       MR. ARGIONIS:  That's my understanding, your Honor.  I

3   haven't found -- we haven't found cases that expressly get into that

4   but that's my understanding.  You're correct.

5       THE COURT:  All right.  Then why isn't Mr. Mattar exactly

6   right, that the way this case should be presented to the jury is that

7   the jury can determine the amount of repair costs -- first, the jury

8   will rule on liability.  Then the jury could rule on the amount of

9   repair costs that were reasonable, appropriate, caused by the fire,

10  whatever the -- whatever the standard is for damages, and then we

11  would also ask the jury to find the pre-injury value of the property

12  and we would cap the repair damages at the pre-injury value of the

13  property.

14      In that way, we wouldn't violate Michigan's rule that the

15  repair damages can't exceed the value of the property.

16      MR. ARGIONIS:  But doesn't that completely ignore the cases,

17  the *Baranowski* case and the other cases that talk about the

18  diminution?  And the jury instructions, too, when you look to that,

19  now that we are getting ready for trial, Chapter 51, there is one

20  jury instruction if there is a dispute as to whether the value is

21  higher or lower and that -- that question can go to the jury.

22      But then -- and then if they determine that the repair costs

23  are higher, then it would be the diminution, the difference between

24  the fair market value before and after the injury.  And -- but if

25  there is no question as to that and I submit that we don't have a

15

1  dispute here because we have no evidence on that question, but I just

2  don't get, your Honor -- I haven't found a jury instruction or case

3  law that would say what your Honor is proposing is the proper measure

4  of damages here.

5       THE COURT:  Well, look, what the cases say consistently, the

6  controlling cases, is that the -- there is no fixed rule for

7  measuring compensation.  That's what *Baranowski* says.  And the

8  Supreme Court in the case cited by the plaintiff talks about the need

9  to be flexible.

10       And in the ordinary case, if there was no evidence that --

11  in the ordinary case, if it was obvious that the repair costs

12  exceeded the value, it does look like the default rule would then be

13  to go to diminution of value.

14       But if you did that here and if you're correct that the

15  plaintiffs don't have evidence about diminution of value, then the

16  plaintiffs would be screwed and will get nothing, even though they've

17  indisputably spent a lot of repair costs that were caused by the --

18  if we get to this question, we've already passed liability.  They

19  would be screwed even though they already spent a ton in repair costs

20  that were caused by a fire for which the defendant is liable.

21       So using common sense and flexibility, it seems to me that

22  the appropriate measure here that stays fully consistent with

23  Michigan law would be to allow repair damages as long as we cap

24  them at the finding of the value of the property pre-injury.  That

25  would not run afoul of Michigan law because it wouldn't award any

16

1  windfall.

2        I understand there may not be a case that says that but it

3  seems to me that the case law that is controlling here gives me

4  plenty of flexibility to figure out a damages model that is -- as

5  long as it doesn't conflict with this rule of no windfall through

6  repair damages.

7        MR. ARGIONIS:  Your Honor, the sentence that talked about

8  the flexibility, I think, all -- as I traced it back, all traces back

9  to the same case and it applies in cases -- I've only seen it applied

10  in cases where the property was totally destroyed.  And maybe it's

11  looking -- you know, maybe the adjuster, you know, made a mistake and

12  it should have been -- this house should have been a total loss or

13  what have you.  I'm not sure.

14        But I didn't find in those cases that language that your

15  Honor is relying upon to be applicable in the cases that talk about

16  diminution for this fact pattern where we have the repair costs

17  exceeding any value that we've seen, whether you look at the

18  assessor's office or whether you look at that post-repair appraisal

19  which are the only elements that were disclosed here.

20        And this is also setting aside the disclosure, the 701

21  versus the 702 issue that I can address at some further point.

22  I didn't see that there's that flexibility for this -- the fact

23  pattern.  I just didn't find that anywhere.  And the jury

24  instructions would seem to then be completely irrelevant.

25        THE COURT:  Look, your theory of this case, again, is that

17

1  if the plaintiffs' only value -- excuse me -- only evidence of

2  injury -- if they were only seeking repair costs and they came in

3  with a certified appraisal taken the day before the fire that said

4  that the value of the property was one penny less than the repair

5  costs -- this is a crazy hypothetical but I'm trying to make a

6  point.

7       The plaintiffs come in and the pre-fire value is one penny

8  less than the amount of the repair costs.  And the plaintiff in my

9  hypothetical does not have any evidence about diminution of value for

10  the second wave of calculating damages.

11       In your theory, that plaintiff who -- they couldn't recover

12  anything, right?

13       MR. ARGIONIS:  Because in that situation, your Honor, it

14  comes down to what did they disclose to me so that I can get a

15  rebuttal expert of that value.  And -- and while it --

16       THE COURT:  Look, we haven't gotten to that point yet.

17       MR. ARGIONIS:  Okay.

18       THE COURT:  I haven't gotten to any question about whether

19  their evidence is sufficient or not.  All I'm exploring here is this

20  model and your theory.

21       And your theory is that in order to be even in the ballpark

22  for damages, your theory is -- I'm sorry, for repair damages.  Your

23  theory is under absolutely no circumstances can these plaintiffs be

24  awarded repair damages unless and until they provide a valuation

25  that is at least a penny more than the repair damages.  If they

18

 1 | can't -- if they can't establish value over the repair damages, under
 2 | no circumstances can they get repair damages.  That's your theory
 3 | here.
 4 | MR. ARGIONIS:  For a property that was repairable as opposed
 5 | to the irreparable.  That is, your Honor.  And that's how -- you
 6 | know, we scoured the case law and that's how I'm seeing the case law
 7 | interpreted and the jury instructions.  I tried to find -- I didn't
 8 | see that flexibility language for this scenario but, yes, your Honor,
 9 | that's what I believe the Michigan case law provides under this
10 | specific fact pattern which apparently hasn't shown up a lot in the
11 | case law.
12 | And my thought is that maybe it doesn't happen that often
13 | because of the way adjusters adjust these things.  I'm not sure.  But
14 | that's how I interpret the cases out there.  And I haven't found a
15 | case on this fact pattern that says otherwise, whether it's in this
16 | jurisdiction or outside the jurisdiction.
17 | And when you look at the variations of the jury instructions
18 | and the comments that say use this one and go to this one, if it
19 | is -- it always takes us back to the difference between the fair
20 | market value of the property immediately before the occurrence and
21 | its fair market value immediately after.  Under this scenario, there
22 | are two or three different pattern jury instructions that refer us
23 | back to that, recover that statement of damages to be recovered in
24 | this fact scenario.
25 | So that's exactly why, your Honor, we brought this and we

19

1   are kind of in a -- you know, I'm stuck with what do I -- I know we

2   are going to get to the other issue but what do I go off of when

3   that's what all the case law points me to and the instructions which

4   we are going to have to put together now soon.

5        THE COURT:  It seems to me also that the plaintiffs are

6   exactly right, that this is way more than a motion in limine.  In

7   order to rule for you here, I would have to make certain evidentiary

8   findings that as a matter of law, there's not -- there's no evidence

9   that could support a finding that the value of the property

10  pre-injury was higher than the repair costs.  That's a summary

11  judgment question, that there's no fact dispute on that.

12       This -- your motion in limine, in order to grant it, I would

13  have to make that finding because evidence of repair cost is only

14  irrelevant if, as a matter of law, the plaintiffs can't prove that

15  the pre-injury value was higher than the amount of the repair costs.

16  That's a summary judgment question.

17       MR. ARGIONIS:  Your Honor, I don't -- while we cited a case

18  that allows your Honor, under that scenario where there is no

19  evidence, to sua sponte grant that type of relief, number one, their

20  claim doesn't go away.  It's just a portion of their claim.

21       And what we are saying is that the case law points you to

22  what -- when you're allowed to present repair costs to a jury and

23  when you're allowed to present the diminution value.  And your Honor

24  can certainly, within the confines of a motion in limine, as you did

25  with the experts, if there's certain evidence that is speculative,

20

1  meaning the homeowner here or whoever, that they didn't -- or number

2  one, in a motion in limine, is it too speculative to get before the

3  jury?  That's certainly within your Honor's discretion here.  And

4  it's not a summary judgment motion.  It's an evidentiary motion in

5  limine issue.

6       And then the second one gets us back to what your Honor said

7  we'll talk about, is that was there proper disclosure and is it a

8  discovery-type relief that you're giving us here.

9       Again, you're not going to grant any motion -- any claim.

10  You're not removing any claim from this.  You're really just limiting

11  them because of the way they presented, either too speculative

12  information or evidence or no evidence to what they can present to

13  the jury.  Because it would be prejudicial.  It would be against the

14  case law for the jury to hear this large dollar amount when there's

15  no cases out there saying they can get to that point without having

16  an opinion on it to support it.

17       THE COURT:  The cure to any prejudice, if there were any --

18  and I'm not yet persuaded that there is any -- but would be the cap

19  on repair damages at the value of the property, to have the jury make

20  both findings.  If the jury finds the value of the property

21  pre-injury and repair damages are capped at that number, I don't

22  think there's any prejudice.

23       MR. ARGIONIS:  The prejudice would be, is that that wasn't

24  presented.  We had no value to go off of.  And I suppose they were

25  picking and choosing from wherever they could find and throwing

1  something against the wall to see if it sticks.  I'm not sure the

2  discovery rules allow for that where I'm supposed to figure out, you

3  know, which of these dribs and drabs from all over the record I was

4  supposed to get some kind of rebuttal expert on.

5          And certainly, if it's a value of a property, that's -- I

6  could have had a rebuttal expert come in and say, certainly not.  The

7  assessor -- you know, the assessor puts this at X, at $700,000 in

8  this year.  He could have went back -- he or she could have went back

9  to the assessor's office another day and obviously looked at

10  comparables and everything else.

11         I wasn't given that opportunity and I -- I wrote to opposing

12  counsel, what other appraisals are you relying upon.  They thought

13  they had other ones.  They said that they didn't have them.  And they

14  only produced the one that was three years after the accident.  So

15  I'm not sure what more I could have done.

16         THE COURT:  I'm willing to let you bring a motion in limine

17  directed individually at each piece of valuation evidence that you

18  think should be excluded.  My concern about this motion is, it's --

19  you have kind of subheadings where you take each piece of evidence

20  that plaintiffs want to offer separately but the real -- the real --

21  you're aiming much higher here, for a broad preclusion of repair cost

22  evidence and not allowing them to seek that.

23         I think there is a basis for a separate motion where you

24  individually walk me through each of this valuation evidence and

25  tell me why you think it should be excluded.  And I will entertain

1  that.

2  I'm just having trouble with the current motion and the

3  broad relief it seeks and that part of it, it seems to me, strikes me

4  as dependent upon a legal conclusion that as a matter of law, they

5  can't prove a pre-injury value greater than repair costs, and I think

6  that conclusion was a summary judgment-type conclusion.  And I'm not

7  yet persuaded of that anyway.

8  MR. ARGIONIS:  And your Honor, if I may?

9  THE COURT:  Yep.

10  MR. ARGIONIS:  On that point, I think you bring -- you bring

11  a good point, assuming that they properly disclose the various pieces

12  of evidence that they are allowing here and that it is opinion under

13  702 that should have been disclosed but I'm happy to address it that

14  way.

15  What I would ask your Honor to make the plaintiffs do,

16  though, is to state them as they would have or as they should have --

17  as I argue they should have in some kind of disclosure so that I can

18  address them.  And if your Honor is going to allow them in, I would

19  ask for some time for me to consider whether we, you know, need to

20  redepose the individual that they are going to produce on that and

21  maybe I rely on just the cross-examination on those specific issues.

22  We aren't going to reinvent the wheel here or reopen things.  Or

23  whether I need to, because it's a 702 issue, to get an appraisal to

24  rebut those.

25  But those were never addressed to me until, you know, the

23

1   motion here, until we raised this motion and their response.  They

2   were never disclosed in a 26 disclosure to us in any proper format

3   where I could have said, hey, I need to question this person on this

4   in cross-examination and/or get a retained expert to rebut it.

5        THE COURT:  All right.  Mr. Argionis, in the plaintiff's

6   response to your motion, in Roman numeral III, the section of

7   plaintiffs' response, the plaintiffs list several types of evidence

8   that they want to use, A through G, to establish the pre-injury value

9   of the house.

10        It's your position that none of that evidence is admissible

11  and so again, what I'd indicate is, I will let you bring a motion in

12  limine seeking -- telling me why I should exclude all that evidence.

13  You go category by category.  You tell me this evidence isn't

14  admissible under the Rules of Evidence.  It's irrelevant.  It's 403.

15  This evidence wasn't properly disclosed in discovery and you tell me

16  in detail why.

17        I'm going to ask Mr. Mattar in a minute, is there any other

18  evidence he wants to use to establish the value.  I will ask right

19  now.

20        Mr. Mattar, you put in your response the evidence you want

21  to use to establish the pre-injury value of the house.  Is there any

22  other evidence that you want to use to establish the pre-injury value

23  of the house that was not identified in your response which is docket

24  55?

25        MR. MATTAR:  No, your Honor.

24

1      THE COURT:  Okay.  So Mr. Argionis, we've now got their list

2  of what they are going to use.  It seems to me that the way to go

3  forward here is to go step by step.

4      It is possible, Mr. Argionis, that I will ultimately end up

5  where you want to end up here.  I will tell you, I'm not going to

6  grant this motion because again, I think the motion in the current

7  posture requires a -- findings that were summary judgment-type

8  findings, namely that as a matter of law, the plaintiffs can't

9  establish that the pre-injury value was greater than the repair costs

10  and I don't think that's a -- even if I have the discretion sua

11  sponte to do that now, I'm not going to do that on the record that is

12  before me.

13      But I will -- the issues you raise are very serious ones and

14  I want to go step by step and take them seriously.  So let's talk

15  about next steps here.

16      I will let you, Mr. Argionis, file a motion in limine where

17  you walk through each of these categories of evidence that are

18  identified at docket 55, page I.D. 1719 through page I.D. 1730.  And

19  again, for each of those categories, you're going to argue to me or

20  you don't have to do it for all of them but whatever ones you want to

21  take up, you tell me every reason these should not be admitted at the

22  trial.

23      You can include in there, were not properly disclosed under

24  Rule 26 either in initial disclosures or if you believe it was expert

25  testimony, through expert disclosures.  You can tell me you believe

1  it's irrelevant.  You can tell me it's unreliable.  Whatever the hell

2  you want to say, you put it all in your motion in limine as to why

3  these types of evidence should not be admitted and then the plaintiff

4  can respond.

5           And once we get through that motion in limine, we will

6  figure out what evidence of valuation is left.  And if you win on all

7  of it, then maybe we will be in a different position here.

8           MR. ARGIONIS:  So --

9           THE COURT:  Go ahead.

10          MR. ARGIONIS:  Sorry, your Honor.  So some of that evidence,

11 even if it's admitted as your Honor had previewed in your questions

12 to Mr. Mattar, don't get them to the place where they want to be.  So

13 will we still consider that, I suppose, after we get through what's

14 in and what's out?

15          THE COURT:  Yeah.  We are going to go step by step, what's

16 in or what's out.

17          MR. ARGIONIS:  All right.

18          THE COURT:  But I don't want to hide the ball here.  My very

19 strong inclination is that if the plaintiffs have any admissible

20 evidence as to the pre-injury value of the house, the plaintiffs will

21 be permitted to go forward to seek repair damages that would be

22 capped up at that value.

23          So let me give you a concrete example of where my current

24 thinking is.  And I want to indicate, Mr. Argionis, this is my

25 current thinking.  It's not written in stone.  And you seem quite

1   persuaded that my current thinking doesn't accurately reflect the law

2   and I'm humble enough to know that this is not my area of expertise

3   and that I want to listen carefully to your later arguments to

4   persuade me I'm wrong.  I'm not there today.

5          But I want to give you a concrete example of the way I'm

6   thinking about this.  If I were to conclude that -- and this is just

7   an example -- that the tax-assessed value is admissible and that the

8   tax-assessed value establishes that the true pre-injury market value

9   was $778,000 and some change.  My current inclination would be to let

10  the plaintiffs seek repair damages of -- that could get as high as

11  $778,000 or higher if there's other evidence that the value is

12  higher.  That's how I currently envision this thing going forward.

13         So step one is to figure out what's admissible.  If I end

14  up admitting something that could support a finding as to the

15  pre-injury value of the property, then I will give you an opportunity

16  to tell me if that pre-injury value evidence I admitted is not north

17  of the repair costs, these guys lose.  I will give you the

18  opportunity to make that argument.  I'm just telling you my current

19  inclination.

20         Do you understand?

21         MR. ARGIONIS:  I do, your Honor.

22         THE COURT:  Okay.

23         MR. ARGIONIS:  Thanks for that clarification.

24         THE COURT:  All right.  So a couple of points that I would

25  like you guys focus on as you are going through the evidence that the

27

1  plaintiffs want to offer.  One of the big points of contention here
2  is whether evidence from Mr. Kwiatkowski, the homeowner, is
3  admissible on the issue of the pre-injury value of the home.  And
4  each of you guys have cited limited case law on this point.
5         This is a very difficult question and there's a lot of case
6  law on it and I want you to do a deeper dive than you've done because
7  this is potentially significant evidence under my current view of the
8  case, which is that they can seek -- the plaintiff can seek repair
9  costs equal to the pre-injury value or capped at the pre-injury
10 value, I should say, because Kwiatkowski puts the pre-injury value
11 pretty high.
12        So if his testimony is admissible and sufficient, that's
13 important and that's why this -- that issue needs a deep dive.  It's
14 not as simple as just citing one Tenth Circuit case that calls it a
15 702 issue generally and one Michigan Court of Appeals case that says
16 it's allowed.
17        Let me give you some citations to a few federal cases that I
18 found.  I don't mean to suggest that -- and I want to underscore
19 this -- that this is the universe of cases.  There is actually an ALR
20 annotation on this and I looked at the cumulative supplement and
21 found these cases.
22        There seems to be case law kind of all over the place on
23 this but let me just give you a few cases that address this to give
24 you a start on the issue.  Again, I can't underscore enough, this is
25 a start.  I don't mean this to be comprehensive.  It's just to show

1   you that this issue is a difficult one.

2        The first case is *United States v. 10,031 Acres of Land*.

3   The case is -- the citation is 850 F.2d 634.  That's a Tenth Circuit

4   case from 1988.

5        Another case is *Cunningham v. Masterwear*, 569 F.3d 673.

6   This is a Seventh Circuit case from 2009.

7        Another case is *Hatcher v. MDOW*.  That's at 903 F.3d

8   724.

9        And there's an unpublished District Court case from within

10   our Circuit called *Friend v. New Lexington Tree Farm* that is 2019

11   Westlaw 4220904.

12        So if you look at these cases and you track them back to the

13   ALR annotation where I found them, you will see that this is a hard

14   issue.  There is this comment to Rule 702 that was cited by the Tenth

15   Circuit in the *James River* case and that is cited by Mr. Argionis.

16   And then there's this other line of cases out there that seem to

17   suggest that homeowners are, with some regularity, allowed to opine

18   about the value of their house and that that's not a 702 question.

19   And then there's some limitations on that.  For instance, there's

20   some limitations on what a homeowner can rely on in giving that

21   opinion.  So that's worth a deep dive because Kwiatkowski's opinion

22   could be so important here.

23        Mr. Argionis, in your motion, one of the points you made in

24   your current motion is that the plaintiff shouldn't be permitted to

25   introduce the piece of paper with the tax-assessed value on it from

29

1  pre-injury because the piece of paper wasn't identified as an

2  exhibit.

3          In response, the plaintiffs have said that they identified a

4  witness from the tax assessor, generically, a representative of the

5  taxing authority who would testify as to value.

6          One thing I would ask you to address when you're talking

7  about the tax-assessed value is, even if you're right that they

8  didn't disclose the document itself as a paper exhibit, why wasn't

9  the disclosure of a witness from there sufficient to put you on

10 notice that they would be presenting evidence of the tax-assessed

11 value and why couldn't the witness from the tax assessor give oral

12 testimony as to the value without admitting the document.  That's

13 something that would be helpful for you to address.  You don't need

14 to address it now.

15         One of the things that I would ask each of you to address

16 is in the plaintiffs' response, one of the pieces of valuation

17 evidence they identify is a -- I think a post-repair appraisal that

18 was done in 2019.  And I think it would be important for both of you

19 to address how a post-repair appraisal three years later is relevant

20 to the pre-injury value before all the fancy repairs were done in a

21 different time frame.

22         And also, whether getting to the question I was asking Mr.

23 Mattar which is, how is the 2019 appraisal linked up to the 2016

24 value?  Does that require expert testimony?  And if so and there is

25 no expert testimony, is that a basis to exclude it?

1          Getting back to Mr. Kwiatkowski's testimony, there's the
2    question about substantively whether it's admissible but another
3    question that I think is important for both parties to address is,
4    Mr. Argionis tells me that in the Rule 26 disclosures, Mr.
5    Kwiatkowski was identified as a witness who would testify about the
6    underlying events.  And Mr. Argionis says in his papers that there
7    was no disclosure that Kwiatkowski would be opining or testifying
8    about valuation questions.

9          Is that something that had to be disclosed in order to
10   permit him to testify about it at trial?  And was there a sufficient
11   disclosure if it had to be disclosed?  So is that a separate basis to
12   exclude his testimony?  It would be helpful to understand that in
13   your motions.

14         I think that those were most of the issues that I would like
15   addressed in the motion in limine.

16         Does anybody know, when is our final pre-trial conference in
17   this?  Mr. Argionis, do you happen to know?

18         MR. ARGIONIS:  February 15.

19         THE COURT:  All right.  What I would like to do is I will
20   hear argument on the motion in limine that day which is often what I
21   do.  So we are going to be on a compressed schedule.  I'm going to
22   need about a week to review it.  So that gives -- Mr. Argionis, we
23   are going to have to kick it into high gear here.  I want you to file
24   the motion in a week.  And Mr. Mattar, I would like you to respond in
25   a week.

1          MR. ARGIONIS:  The --

2          THE COURT:  Go ahead, Mr. Argionis.

3          MR. ARGIONIS:  And I know, I guess we are sticking with the

4  schedule.  The only thing I would bring up is my associate may not be

5  able to assist me with what's going on.  He has his first child on

6  the way, with that compressed schedule, but I guess we will make do

7  if there is no way to adjust this beyond which I understand -- I

8  mean, we've got a March 2nd trial date.  We will make do if we have

9  to, I guess.  I just wanted to raise the situation.  We might be in

10  more of a time crunch than -- than just that to address.

11          And I was also going to ask your Honor as to page limits

12  since we are addressing various of these things, do you want them

13  addressed in one motion --

14          THE COURT:  Yeah.

15          MR. ARGIONIS:  -- and stick to a page limit or --

16          THE COURT:  Yeah.  Just -- you can do a single omnibus

17  motion in limine and I would like to think that you could do this in

18  25 pages, our page limit.  If you can't, you know, you can go up to

19  30.  I can live with that.

20          All right.  So the final pre-trial conference will be

21  busy.  We will have a very full agenda, including arguing this

22  motion.  We will talk about jury instructions and a whole host of

23  trial things.

24          Oh, one point.  Since I last saw you guys, I've relocated

25  from Flint to Detroit.  I think that will make everybody's life a lot

32

1  easier but this case had been given a Flint designation.

2         Are you agreeable to try this case in Detroit, Mr.

3  Argionis?

4         MR. ARGIONIS:  Yes, your Honor.

5         THE COURT:  All right.  And Mr. Mattar, are you?

6         MR. MATTAR:  Yes, your Honor.

7         THE COURT:  Okay.  Now, I see that the final pre-trial

8  is scheduled for -- what's the date here?  It's the 15th, did you

9  say?

10        MR. ARGIONIS:  February 15th, correct, at 1:30 eastern.  And

11 your Honor wanted client representatives there, too, right?

12        THE COURT:  Yeah.  What about moving the time up?  Have you

13 guys -- the folks that are coming in from out of town, have you

14 already made your travel plans?  With our full agenda, it might make

15 sense to start earlier.

16        MR. ARGIONIS:  I would agree with that.  I haven't made my

17 travel plans yet.  I'm not sure as to the client reps but I think

18 that makes sense, your Honor.

19        THE COURT:  All right.  Let's -- Mr. Argionis, will you

20 check with your client rep and Mr. Mattar, would you as well?  And

21 send an e-mail to my case manager, Holly, letting us know if you guys

22 could start earlier.  Can you let us know within a day or two and if

23 we can, we will start in the morning before lunch.

24        And in terms of client reps, I want not just a client

25 representative but I want to be clear about this.  I want a client

1  representative with full settlement authority.

2  Do you understand that, Mr. Argionis?

3  MR. ARGIONIS:  Yes, your Honor.

4  THE COURT:  Mr. Mattar, do you?

5  MR. MATTAR:  Yes, your Honor.

6  THE COURT:  All right.  Because even though this case is set

7  for trial, I think this is ultimately going to be a good candidate

8  for settlement and I want to work very diligently with the parties

9  after getting through the litigation part of the final pre-trial and

10  resolving all the open issues there and setting up the trial, then I

11  want to make one last hard run at settling the case with me working

12  with the right people.  That's my plan.

13  MR. ARGIONIS:  Your Honor, one question on that, given the

14  situation and my opposing counsel know this.  We are still within a

15  fairly large SIR deductible or whatever it is so the general counsel

16  of the company is the one that attended the last settlement

17  conference and has the full authority up to that amount and the

18  insurance company, I guess, contractually doesn't have any obligation

19  to contribute.

20  So do you -- would it be okay to have that insurance person

21  just available on the phone?  I don't even know if we are -- the

22  numbers we are talking about here don't even implicate them yet but

23  obviously, we are keeping them apprised.

24  THE COURT:  Mr. Argionis, I'm embarrassed to say, I don't

25  know what a SIR is.

34

1          MR. ARGIONIS:  Oh.

2          THE COURT:  Can you dumb it down for a guy like me?

3          MR. ARGIONIS:  Sorry.  A self-insured retention.  It's the

4     equivalent of a deductible.  So they are responsible for the first

5     X amount of dollars, the company itself, before the insurance company

6     would have to contribute anything toward settlement or defense.

7          MR. MOSS:  Judge, may I comment on that?

8          THE COURT:  Yep.

9          MR. MOSS:  So that's -- that's the problem.

10          MR. ARGIONIS:  It is.

11          MR. MOSS:  Okay.  So we agree on that.

12          So, judge, there's a company, the defendant, large,

13     prosperous, that chose an insurance policy with a large deductible.

14     For whatever reason, and I'm not privy to this, they have insurance

15     above the deductible but that policy doesn't want to talk.

16          So if it were me, I would suggest the Court issue an order

17     that they have to be there because the only way this goes anywhere

18     is with their participation.  And if you let me be very practical

19     about it, so they -- they have this deductible.  It's not been

20     disclosed to me exactly what it is.  I'm left to guessing.  But they

21     have a deductible.  That deductible goes towards attorney fees.  So

22     they do this analysis, oh, we've already paid to defend this case.

23     We will add the cost of a trial.  And we will pay the defendant the

24     difference -- or the plaintiff the difference but we want to save

25     something.  Because if we don't save something, then let's just have

35

1  a trial.

2       So the analysis -- I mean, it affects us because they chose

3  to get this kind of policy. But the insurer is the one who has to

4  help the defendant and I think there should be an order saying they

5  have to be there. Now, somebody --

6       THE COURT: Mr. Moss, I hear you and that makes perfect

7  sense but let me ask you a question. Does the insurance carrier's

8  obligation kick in only if the full amount of the SIR is paid? In

9  other words, if the -- if the insurance carrier is sitting there and

10  FXI says out of our pocket, we are only going to pay less than this

11  deductible, doesn't that make the insurance carrier's participation

12  immaterial?

13       MR. MOSS: Well, I -- I don't know what the policy says.

14  No. I mean, I have plenty of cases where we run into this and the

15  carrier participates, sometimes because the Court said a

16  representative of the carrier has to be at the conference. Sometimes

17  they are smart enough to realize that maybe if they throw in, you

18  know, 200,000, it would avoid a, you know, 1.7 million dollar

19  exposure. I don't know. Right now, that is the impediment to why

20  we're on course for, you know, a six, eight-day trial during COVID.

21  That's why.

22       MR. ARGIONIS: And, your Honor, to put a finer point on

23  that, I don't disagree but what I'm being told by the carrier is that

24  any money that they contribute now before that deductible is

25  exhausted would just get charged back to the insured pursuant to the

1  contractual relationship they have.

2        So, you know, he says even if I contribute, FXI is paying

3  for it.  So it needs to be FXI's decision to pay that amount.  And

4  we're not -- you know, we're not -- I don't think I'm speaking out of

5  turn.  We are not that far apart relatively speaking.  It's just that

6  conundrum where that money would get charged back to FXI anyway.

7        So I -- I can -- I can check in.  I did alert the claims rep

8  of the date and time, the 1:30 on February 15th.  I could move it up.

9  I could see what I could do but I think he is going to be telling us

10  the same thing that he has been telling me.

11        THE COURT:  Well, you know what.  Let's have him tell it to

12  me in person.

13        MR. ARGIONIS:  Okay.

14        THE COURT:  So do I need to issue a written order to compel

15  his attendance?  Is that what --

16        MR. ARGIONIS:  Yeah.  I don't think you have to but it would

17  help if it is.  If I let him know that we had this conversation, he

18  will make the travel arrangements but why not include it.

19        THE COURT:  Okay.  And would you keep him in the loop, Mr.

20  Argionis, about the start time that we will be looking to advance up

21  a little bit?

22        MR. ARGIONIS:  I will.  I will figure that out.

23        THE COURT:  Okay.  Mr. Argionis, anything else you would

24  like to chat about while we're on the record today?

25        MR. ARGIONIS:  Any other motions in limine -- we are still

1  working through the final pre-trial order with opposing counsel and

2  all that.  We are going to defer to that same date?  Because the last

3  scheduling order we had, we had built in like a briefing schedule on

4  motions.  You know, we've been working with the other side to get

5  those together but we will just address everything on the 15th if

6  there's anything more to argue.  We may have some that we're agreeing

7  to anyways.

8          THE COURT:  Are you suggesting that there are more motions

9  coming?

10         MR. ARGIONIS:  Nothing -- nothing substantial but really,

11  just to clarify your prior rulings and things of that nature as to

12  what, you know, in and out and I think we can -- as to experts

13  primarily, I think we can figure those out with opposing counsel.

14         But I think we may need to draft them in some format just

15  to be clear based on how you ruled on those motions to exclude way

16  back when so that we're clear as to what we are presenting to the

17  jury.

18         THE COURT:  All right.  Why don't you guys work real hard to

19  see if you can come up with a stipulation that tries to figure out

20  what I ruled before and adhere to it.  If there's areas you can't

21  agree on, then I will take those up.

22         MR. ARGIONIS:  Okay.

23         THE COURT:  Anything else, Mr. Argionis?

24         MR. ARGIONIS:  I think that's all I have, unless Mr.

25  Hickman, did I forget anything?

38

1          MR. HICKMAN:  No, nothing else for me.

2          THE COURT:  Mr. Hickman, are you the one who is having a

3  kid?

4          MR. HICKMAN:  I am, your Honor.  Thank you.

5          THE COURT:  Congratulations.

6          MR. HICKMAN:  Thank you.

7          THE COURT:  It will be Mr. Argionis's turn to do some heavy

8  lifting and some real work while you're gone.

9          MR. HICKMAN:  I joke --

10          THE COURT:  It might be a shock to his system.

11          MR. HICKMAN:  I joke with him that I timed it this way on

12  purpose so I wouldn't have to help him out on this.

13          THE COURT:  Well, congratulations.  Good for you.

14          MR. HICKMAN:  Thank you.

15          THE COURT:  Mr. Mattar, anything else for the plaintiff?

16          MR. MATTAR:  There are other things to address that Jim

17  argued but we will just refer to the additional briefing and oral

18  argument for all that stuff.

19          THE COURT:  Okay.  So let Miss Monda know about the time if

20  you guys can start earlier that day and if you can, we will get a

21  renotice out changing the time.

22          Thank you all very much for your thoughts and arguments

23  today.  These are really interesting issues and today, I think even

24  though I denied the motion, this is the start of some interesting

25  discussions about what the damages case will look like and I look

39

1   forward to continuing our discussion of these issues.

2          Thank you very much.  I will see you guys at the final

3   pre-trial conference.  In the meantime, take care.  See you

4   later.

5          MR. MOSS:  Thanks, judge.

6          MR. MATTAR:  Thank you.

7          MR. ARGIONIS:  Thank you.

8          (At 11:35 a.m. - proceedings adjourned)

9                         *******

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

40

*CERTIFICATE OF COURT REPORTER*

I, PEG L. GOODRICH, Official Court Reporter
in and for the United States District Court, Eastern
District of Michigan, appointed pursuant to the
provisions of Title 28, United States Code, Section
753, do hereby certify that the foregoing proceedings
held before the HONORABLE MATTHEW F. LEITMAN, District
Court Judge, is a true and correct transcript of my
stenotype notes in the matter of CITIZENS INSURANCE
COMPANY OF AMERICA v. FXI, INCORPORATED, File No.
18-12076, held on Friday, January 21, 2022.

s/Peg L. Goodrich
Peg L. Goodrich, CSR, RPR, RMR
Federal Official Court Reporter
United States District Court
Eastern District of Michigan

Date:  January 21, 2021